WESTERN WHEELED SCRAPER COMPANY, Respondent, vs. CHIPPEWA COUNTY, Appellant.

*March 17 — April 4, 1899.*

*Contracts: Construction: Warranty: Notice of defects: Evidence: Court and jury: Counties: Ultra vires: Purchase of stone-crusher.*

1. The defendant county agreed to purchase a stone-crusher of plaintiff under a contract warranting the machine to be thoroughly made, of good material and workmanship, and capable of doing the work for which it was intended, and providing that three days should be allowed for testing the machine, at the expiration of which the county agreed to make settlement. *Held,* that the county was not obliged to accept the machine unless it was demonstrated during such three-days test that it was capable of crushing such rock as existed in the county, without breakage of substantial parts.

2. The contract in such case also provided that, if any part of the machinery should prove defective or fail to fill the warranty, the defendant should notify the plaintiff, etc., and that continued possession of the machine for thirty days after it was set up should be conclusive proof that it fulfilled the warranty. *Held,* that such notice was required only where defects were discovered after the machine had been tested, and not where it failed to meet the prescribed tests made under plaintiff's supervision.

3. In an action on such contract the defendant pleaded failure of the machine to comply with the warranty, and its evidence tended to show that it was rejected, by the committee of the county board having the matter in charge, at the end of the third day's test, because of defects in the swinging die; that an arrangement was then made between one member of said committee and plaintiff's

agent by which the latter was to take possession of the machine, obtain new dies, and run it for the town of which said member was chairman; that a majority of the committee were present at the test, but that the machine worked no more satisfactorily than before. On the other hand the plaintiff's evidence tended to show that the committee agreed to said further test; that it continued four and three-fourths days; and that the machine worked satisfactorily during such time, except that the swinging die began to show signs of wear, but not sufficient to disable the machine. *Held,* that it was error for the court to submit to the jury only the question whether the last-mentioned test was made within a reasonable time after the first die was found defective.

4. Under sec. 1308, Stats. 1898 (authorizing the county board to adopt main traveled roads as county highways, to keep the same in repair, and to designate other roads for the purpose of making repairs thereon without adopting them as county roads), a county may purchase a stone-crusher; and the fact that a purpose was expressed to rent such machine to the several towns did not take away such power.

APPEAL from a judgment of the circuit court for Dunn county: E. W. HELMS, Circuit Judge. *Reversed.*

For the appellant there was a brief by *C. B. Culbertson,* district attorney, and *W. M. Bowe,* and oral argument by *Mr. Bowe.*

For the respondent the cause was submitted on the brief of *Connor & Leonard.*

CASSODAY, C. J. This is an action to recover $915, as the purchase price of a rock-crushing machine. The complaint was upon a contract therefor, which was in writing, and consisted of a written order, signed by a committee of the defendant's board of supervisors, dated April 18, 1896, to the effect that the plaintiff should ship to the defendant on or about April 26, 1896, subject to the conditions therein named, "one No. 10 Western Stone Crusher," described; that the plaintiff should furnish a competent man to superintend the putting of the above machinery in place; that "the Western Stone Crusher is warranted to be thoroughly

made, and of good material, and workmanship, capable of doing the work for which it is intended, without breakage, for the term of one year from date of sale;" that "we guarantee the 9x15 machine to crush from ten to twenty tons per hour, with two-inch toggle, according to nature of material,— other sizes in like proportion;" that, "after the above machine is set up and ready for work, three days' time shall be allowed for testing, at the expiration of which time we agree to make settlement;" that, "if any part of the machinery should prove defective, or fail to fill the warrant in accordance with the terms named herein, we agree to notify the *Western Wheeled Scraper Co.*, at Aurora, Ill., and also the agent from whom the goods were purchased;" that the "company shall be given a reasonable time to remedy the defects and to make the machinery do the work as warranted, and we are to render them friendly assistance;" that, if it is not able to make the machinery do the work warranted, it thereby agrees to remove them at its own expense, and to refund any payment that has been made; that continued possession of the machine for thirty days after the same is set up shall be deemed conclusive proof that it has fulfilled the warranty, unless notice in writing to the contrary is received by the *Western Wheeled Scraper Company*, as before stated; that "for above-specified goods the price is to be $915, which amount we hereby agree to pay" as therein stated.

The complaint further alleges, in effect, that April 22, 1896, the defendant duly accepted and confirmed the agreement to so purchase, and the written order therefor, and duly ratified and confirmed the acts of its committee in relation thereto, and appointed a committee of five of its board to attend the testing of the machine; that the plaintiff, in accordance with the terms of the agreement and order, duly delivered the machine described to the defendant, and at the time appointed for the testing of the same the plaintiff

fully satisfied and fulfilled every requirement as to the kind
and capacity of the machine and its ability to do the work
for which it was intended, and performed and fulfilled all
of the conditions and obligations on its part to be performed
under the agreement and order, and demanded the purchase
price, which the defendant neglected and refused to pay,
or any part thereof; that November 7, 1896, the plaintiff
duly filed its claim for the purchase price with the county
clerk; that November 18, 1896, the defendant, by its board
of supervisors, disallowed the claim and every part thereof;
that December 31, 1896, the plaintiff duly appealed to the
circuit court from such disallowance.

The defendant answered by way of admissions, denials,
and counter allegations to the effect that the defendant's
committee and the agent furnished by the plaintiff for that
purpose met for the purpose of testing the machine May 7,
1896, and afterwards, at the request of the plaintiff, met with
said agent for further tests of the machine, at each of which
times a thorough test of the machine was made by said
agent and the defendant's committee; that at each and all
of such tests it was found and determined by the committee,
as the fact was, that the machine was defective and insuffi-
cient and failed to comply with the warranty contained in
the written agreement, in the following particulars: That
the machine was not made of good material, that the work-
manship was not good, nor was the machine capable of doing
the work for which it was intended, or any other work, nor
was the machine capable of crushing from ten to twenty
tons of rock per hour with two-inch toggle, or otherwise,
but on the contrary it was demonstrated at both of such tests,
and the fact was, that the machine would work for only a
short time, and then important and essential parts of the
machine, by reason of inferior workmanship and material
and by reason of the unfitness of the machine to do the work
for which it was intended, would become broken, worn out,

and useless, and the machine thereupon would become incapable of doing any work whatever; that the defendant had complied with all the terms and conditions of the agreement on its part to be performed, and notified the plaintiff and its agent of the defects and insufficiency of the machine and its failure to comply with the agreement, and had given the plaintiff a reasonable time to remedy the defects and make the machine do the work as warranted, and rendered the plaintiff friendly assistance, but that the plaintiff was not able to make the machine do the work as warranted, or comply with the terms and conditions of the agreement; that within the time stipulated in the contract the defendant had rescinded the agreement for the reasons stated, and refused to accept of the machine, and thereupon notified the plaintiff, in writing, of such rescission and refusal, and returned the machine and appliances used in connection therewith to the plaintiff.

At the close of the trial the court submitted to the jury no verdict, but only one question, which, with the answer of the jury thereto, is as follows: " Q. Was the day the third test was begun a reasonable time, after the first die was found defective, within which to remedy the defect in the machine by the plaintiff company ? A. Yes." Thereupon judgment was entered on such finding in favor of the plaintiff for $1,202.36 damages, interest, and costs, from which judgment, and the whole thereof, the defendant appeals.

It is undisputed that several different tests of the machine, as provided in the contract, were made under the supervision of the plaintiff's expert, Warren, and its agent, Burk, who sold the machine, in the presence of the defendant's committee; that the first of such tests took place May 7, 1896; that such test was continued by and in the presence of the same persons May 8, 1896; that another test was made by and in the presence of the same persons May 18, 1896.

There is evidence on the part of the defendant tending to

prove that the defendant supplied the power, men, and material at each of such tests, all to the satisfaction of such agents of the plaintiff; that before the close of the day May 7, 1896, the corrugations broke and wore off the swinging die, and the product or rock operated upon changed from the cubical form to large, flat pieces; that the test was commenced May 8, 1896, with the swinging die reversed; that the other end was tried, with the same result as on the previous day; that at first the rock was properly crushed, but later in the day the corrugations chipped off, letting coarse material through; that the plaintiff's agents acknowledged the failure of the test, and requested a postponement of the third day's test, so as to allow them to get a new die; that such agent notified the plaintiff accordingly, and a new swinging die was forwarded; that the third day's test took place May 18, 1896, and the result was the same as on the two former days; that at first the work was satisfactory, but that after the machine had been running an hour or two the die began to give out; that they continued to run the machine a little over a half a day, when the product or rock operated upon began to change, the same as on the two previous days (that is, the rock came away in large, flat pieces, instead of smaller pieces), and finally they quit work between 3 and 4 o'clock that afternoon; that the defendant's committee appointed to witness such test thereupon held a meeting near the place of such test, and all five unanimously agreed to and signed this statement, to wit: "Eagle Point, May 18th, 1896. We, the committee, find, on and after a three-days test, that the machine is not able to do the work; and we do not accept it."

The evidence for the defendant further tends to prove that the committee thereupon caused a copy of such statement to be served on such agent of the plaintiff; that on the same day the committee caused a copy of such statement to be sent by letter to the plaintiff at its office in Aurora, Illi-

nois, and in the letter stated, in effect, that the machine was in the town of Eagle Point, awaiting their further order, that it was not accepted, because the dies did not stand the stone they were crushing, that the defendant declined payment, and that the machine had failed to comply with the warranty mentioned in the contract; that the next day the committee telegraphed the plaintiff, at its office: "Rock crusher now subject to your order. Have written you;" that after the committee had rejected the machine on the evening of May 18, 1896, one of the committee, who was also chairman of the town board of Eagle Point, talked with the plaintiff's agent, Burk, and told him that, if he wished to give his machine a further test, the town of Eagle Point had made all arrangements therein to put that machine at work if it would prove satisfactory, and if he would take possession of the machine (which he at first refused to do) then he could work the machine as long as he pleased in Eagle Point, and that town would furnish the team, haul the material, and take care of it, and that unless he did so they would have nothing more to do with it, and that such test would be under the direction of that town; that such agent finally accepted of such proposition, to wit, that he would take possession of the machine, and get new dies, and work it in Eagle Point; that another member of such committee was present when such conversation was had with such agent; that upon the request of such agent, and in pursuance of the clause of the contract requiring the defendant to give friendly assistance, a majority of the committee were present at the testing of the machine in such town June 12, 1896, but that the same worked no more satisfactorily than before.

On the other hand, there is evidence on the part of the plaintiff tending to prove that after the defendant's committee rejected the machine on the afternoon or evening of May 18, 1896, it was agreed on the part of the com-

mittee and the plaintiff's agent that there should be a further test of the machine on or about June 4, 1896; that such test was commenced on that day, and continued four days and three quarters, and the machine during that time worked satisfactorily, except that at the end of the time the swinging die began to show signs of wear, but not sufficient to be disabled; and that such test was in the presence of Hopkins, who was chairman of the town and a member of the committee, and who testified that the steel die during that test had worn down nearly smooth, and the product then became unsatisfactory.

1. Error is assigned because there is no verdict covering the questions put in issue by the pleadings and litigated upon the trial. The important questions so at issue and litigated were whether the machine was thoroughly made, and of good material and workmanship,— capable of doing the work for which it was intended, without breakage, as it was warranted to do. True, such warranty was to continue for the term of one year from the date of sale, but this was on condition that it was capable of doing the work for which it was intended. In order to determine that fact, the contract provides that, after the " machine is set up and ready for work, three days' time shall be allowed for testing, at the expiration of which time" the defendant thereby "agreed to make settlement." This certainly does not mean that the defendant was to make such settlement regardless of the result of the test. It manifestly means that the defendant was only to make such settlement in case the machine reasonably stood the test. Some unexpected breakage of some minor part of the machine, with no opportunity to remedy the same, may not be good ground for rejecting the machine; but the defendant was not bound to accept of the machine and make settlement therefor unless it should be demonstrated during such three-days test that it was capable of doing the work for which it was intended, with-

out any substantial breakage. The work which it was so intended to perform was to crush such rocks as existed in *Chippewa* county. The defendant, with the knowledge of the plaintiff, contracted for the machine for that very purpose. The defendant had no power or authority to buy it for the purpose of crushing rocks in any other county. Unless it was capable, under the superintendence of a competent man furnished by the plaintiff, to crush such rocks as existed in *Chippewa* county, it would be of no use to the defendant. If the machine stood the three-days test reasonably well, then the defendant was bound to take the machine and make settlement therefor. If the machine, under the plaintiff's expert superintendent and its agent, could not be made to do the work for which it was so intended, without the breakage of substantial parts, then certainly the defendant was not required to give notice of such failure. But if it stood such three-days test, and thereafter proved defective or failed to fulfill the warranty, then the defendant was to give notice as stipulated, and the plaintiff was to be given a reasonable time to remedy the defects and to make the machinery do the work as warranted, with the friendly assistance of the defendant. This is apparent from the fact that the agreement makes continued possession of the machine for thirty days after being set up conclusive proof that it has fulfilled the warranty, "unless notice in writing to the contrary is received by the" plaintiff. All questions as to whether the machine, after it was set up and ready for work, stood the three-days test (that is to say, whether the machine was capable of doing the work for which it was intended, without breakage of any substantial part), or whether any substantial part was made of good or poor material, were taken from the jury. The only question submitted to the jury was whether the trial of the machine from June 4 to June 8, 1896, was a reasonable time within which to remedy the defect, after the first die was

Western Wheeled Scraper Co. vs. Chippewa County.

found to be defective, May 7, 1896. The charge of the court in submitting that question ignored the questions so put in issue by the pleadings and litigated on the trial. Such last trial was seventeen days after the three-days test had terminated. We must hold that the verdict does not determine the questions at issue and litigated upon the trial. *Sherman v. Menominee River L. Co.* 77 Wis. 14.

2. We cannot hold that there was any error in refusing to direct a verdict in favor of the defendant for want of power in the county to make the purchase. The statute authorized the county board to adopt any main traveled highway, or parts thereof, as a county road, and to keep the same in repair. So it may designate any such highways, or parts thereof, for the purpose of expending money in repairing the same, without adopting them as county roads or assuming any responsibility for injuries thereon, and may annually levy a county road tax not exceeding $8,000 for improving such highways. Stats. 1898, sec. 1308. The action of the defendant's committee appears to have been expressly authorized by the county board. The mere fact that a purpose was expressed to rent such machine, when purchased, to the several towns, even if *ultra vires*, did not take away the power to purchase the machine. The powers given by the statute cited by implication included the power to make the purchase. *Ellinwood v. Reedsburg*, 91 Wis. 131.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.