JENEWEIN, Administrator, Respondent, vs. TOWN OF IRVING, Appellant.

*March 25—June 10, 1904.*

*Highways: Culvert: Defects causing death: Pleading: Evidence:*
    *Court and jury: Proximate cause: Failure to submit issue:*
    *Extraordinary rise of water over road: Contributory negli-*
    *gence.*

1. In an action for death alleged to have been caused by a defect-
    ive culvert, the allegations of the complaint are *held* suffi-
    ciently broad to admit evidence of the condition of the high-
    way at and near the place in question, and particularly that
    the highway curved slightly as it passed over the culvert,
    although such curvature was not specifically alleged.
2. There being evidence in this case that a deep hole at one end
    of a culvert was in close proximity to the traveled track, and
    that there were no guards or railings or anything to indicate
    its location or the danger, it cannot be said, as a matter of
    law, that the highway was not defective.
3. The question whether an unusual and extraordinary accumula-
    tion of water, due to the sudden melting of snow, overflowing
    the highway at the culvert and making it temporarily unsafe,
    was the proximate cause of the accident, is *held*, upon the evi-
    dence, to have been one for the jury.
4. Such question, being raised by the pleadings, should have been
    submitted to the jury in some appropriate form; and the fail-

ure to submit it specifically in the special verdict is *held* not to have been cured by the charge of the court upon the question whether the insufficiency of the highway was the proximate cause of the accident.

5. Whether plaintiff's intestate was guilty of contributory negligence in attempting to drive over the culvert at the time, is *held*, upon the evidence (showing among other things, that the line of the highway, with fences on the side, was obvious to her, and that she knew other vehicles had just passed over the culvert and through the water), to have been a question for the jury. *Schrunk v. St. Joseph*, 120 Wis. 223, distinguished.

APPEAL from a judgment of the circuit court for Monroe county: J. J. FRUIT, Circuit Judge. *Reversed.*

This action was commenced June 19, 1901, to recover damages for the death of the plaintiff's wife, April 5, 1899, caused by an alleged defective culvert or sluiceway in the public highway, having deep holes and gullies on each side of said culvert and near and adjacent to the traveled track, and an absence of guards, barriers, or railings. Issue being joined and trial had, the jury returned a special verdict to the effect (1) that the highway at the place where and the time when the accident happened was insufficient or in want of repair; (2) that such insufficiency or want of repair was the proximate cause of the death of Martha Jenewein; (3) that the deceased, Martha Jenewein, was not guilty of any want of ordinary care at the time and place of the accident which contributed to her death; (4) that they assessed the plaintiff's damages at $1,200. From the judgment entered upon such verdict for the amount stated and costs, the defendant appeals.

For the appellant there was a brief by *Pope & Pope,* and oral argument by *Carl C. Pope.* They argued, among other things, that the extraordinary and unprecedented high water at the culvert was the immediate cause of the death, or at least one of the immediate causes. Assuming that there were defects in the highway as claimed by the plaintiff, and that such defects co-operated with the high water in causing the

death, then there could properly be no recovery against the defendant unless the jury determined that the damage would not have been sustained but for such defects. *Houfe v. Fulton,* 29 Wis. 296, 307; *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624, 642. The law was not so given in the charge of the learned trial court on that question.

For the respondent there was a brief by *Bundy & Wilcox,* attorneys, and *G. M. Popham,* of counsel, and oral argument by *R. P. Wilcox.* They contended, *inter alia,* that the jury was amply warranted, on the evidence, in finding the highway insufficient, simply because of the hole, the narrowness of the road at this particular place, and the want of a barrier. The fact that water for which no one was responsible, lying over this insufficiency, increased its capacity to injure or the probability of its inflicting injury, or brought it into activity as a proximate cause, does not relieve the defendant from liability, if such defect in fact proximately caused the injury. The doctrine of concurring causes does not apply to release the defendant here, as will be seen from a careful reading of the cases cited by counsel for appellant. Assuming, as we must, in view of the evidence and finding of the jury, that the highway was insufficient and in want of repair, under the statute, then the mere fact that an innocent, irresponsible cause, utterly inadequate to cause the accident alone, contributed with such defect to cause the injury, would not absolve defendant from liability. *Rumrill v. Delafield,* 82 Wis. 184; *Boltz v. Sullivan,* 101 Wis. 608; *Carpenter v. Rolling,* 107 Wis. 559; *Prahl v. Waupaca,* 109 Wis. 299; *Stauffacher v. Sylvester,* 113 Wis. 559. Nothing can be found in the evidence in the case at bar, which could possibly have been the *efficient, producing, proximate* cause of the injury, except the insufficient condition of the way. No instructions were requested by defendant on the question of proximate cause, and if defendant deemed it important or material that the jury should have been instructed as now claimed by

the counsel, proper requests therefor should have been made to the trial court. In the absence of such request, or any sufficient exception, neglect to so instruct will not be considered on appeal. *Lachner v. Salomon,* 9 Wis. 129; *Karber v. Nellis,* 22 Wis. 215; *Schultz v. C. & N. W. R. Co.* 44 Wis. 638; *Collins v. Shannon,* 67 Wis. 441; *Newton v. Whitney,* 77 Wis. 515; *Thrasher v. Postel,* 79 Wis. 503; *Nat. Bank v. Illinois & W. L. Co.* 101 Wis. 247; *Little v. Iron River,* 102 Wis. 250; *Schroeder v. W. C. R. Co.* 117 Wis. 33.

The following opinion was filed April 19, 1904:

CASSODAY, C. J. It seems to be undisputed that the highway at the place in question runs in a northerly and southerly direction; that the road was level and practically straight over the culvert and for some distance each side, though it curved slightly toward the west; that the width of the road at the culvert was between thirteen and fourteen feet, and on a fill of some eighteen inches higher than the ground within the limits of the highway proper at either side thereof, and the sides of the fill sloped gently to the level ground; that the culvert was made of timber covered with poles some seventeen or eighteen feet long, covered with perhaps a foot of earth; that from the wheel track on the westerly side to the margin of the highway was from two and one half to three feet; that at the west end of the culvert there was a deep hole, over five feet wide, east and west, and about seven feet long, north and south, and over five feet deep from the surface of the highway over the culvert; that there was a large body of snow on the ground April 4, 1899, and on that day and the day following, which was the day of the accident, the weather was very warm, and the melting snow caused the water to rise in the vicinity of the culvert, so that at the time of the accident, which happened about 4 o'clock in the afternoon, the highway at the culvert was submerged by a stream of water, about thirty feet wide, flowing from the hole described over the

road from the west to the east, and from six to ten inches in depth, and that the culvert was located about the middle of such stream of water; that on the day in question the deceased, with the two young daughters of the plaintiff, left their home shortly after dinner to go to Black River Falls in an open buggy drawn by a single horse; that as they approached the culvert going north the deceased was seated on the east or right side of the buggy, and the two little girls seated on her left; that shortly before reaching the culvert they passed the stage coming south from Black River Falls, and which had necessarily passed through the water and over the culvert; that the deceased had some conversation with the stage driver at the time of passing; that they also passed a lady driving a single horse and coming south, a few rods south of the culvert, and who had necessarily driven through the water and over the culvert; that when they reached the water running over the culvert the deceased was holding one line firmly in each hand, and driving straight ahead from where the wheel tracks entered the water on the south to the point where they naturally would have come out of the water on the north; that the horse was in the left-hand traveled track when they reached the water; that when they got about halfway through the water the horse's front feet suddenly went down in the hole at the west end of the culvert (described), and the buggy was tipped over to the west into the hole, and the deceased was thrown into the water and drawn into the culvert and was drowned.

1. We perceive no error in the admission of testimony tending to prove that the highway curved slightly as it passed over the culvert. The ground of the objection is that such curvature was not specifically alleged in the complaint. But the defect claimed was specifically alleged, and the allegations were sufficiently broad to admit evidence as to the condition of the highway at and near the place of the accident. Such evidence had some bearing, at least, upon the question whether

there was any contributory negligence on the part of the deceased.

2. Error is assigned because at the close of the testimony the court refused to direct a verdict in favor of the defendant on several grounds stated. It is undisputed that the deep hole at the west end of the culvert was in close proximity to the traveled track, and that there were no guards or railings or anything to indicate its location or the danger. We cannot say, as a matter of law, that the highway at the point in question was not defective. This court has repeatedly held that, "to render a town liable for injury by reason of a defective highway, the object or defect causing the injury need not be within the traveled track, provided it is so connected with the traveled track as to render the same unsafe and inconvenient to those traveling thereon." *Slivitski v. Wien,* 93 Wis. 460, 462, 67 N. W. 730, and cases there cited; *Carpenter v. Rolling,* 107 Wis. 559, 563, 83 N. W. 953; *Wells v. Remington,* 118 Wis. 573, 580, 95 N. W. 1094, 1096.

3. Another ground upon which the court was asked to direct a verdict in favor of the defendant is that the highway, at the time and place of the "accident, had become temporarily dangerous to travel, by reason of an extraordinary, sudden, and unprecedented rise of water, overflowing said highway." This court held, many years ago, that a municipality "is not bound to provide against extraordinary storms, such as private persons of ordinary prudence do not usually anticipate and provide against." *Allen v. Chippewa Falls,* 52 Wis. 430, 9 N. W. 284. The principle of that case was followed and sanctioned in a recent case, where it was held that "the duty of a municipality to keep its highways in a reasonably safe condition for public use does not include providing against insufficiency caused by extraordinary events." *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946. In that case the "extraordinary event" referred to was an extraordinary flowage or accumulation of water. Usually such ques-

tions are for the jury. Thus it has been held that "the question whether, in a given case, the freshet causing the danger was of such unusual and extraordinary character as to excuse a party from foreseeing and providing against it, is for the jury under proper instructions." *Borchardt v. Wausau Boom Co.* 54 Wis. 107, 11 N. W. 440. To the same effect, *Wiltse v. Tilden,* 77 Wis. 152, 46 N. W. 234. Such extraordinary flowage or accumulation of water is usually considered upon the question of contributory negligence. *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939; *Jung v. Stevens Point,* 74 Wis. 547, 43 N. W. 513. It will be so considered in this case. Upon the evidence in the record we cannot say, as a matter of law, that the sudden rise of the water was the proximate cause of the injury. On the contrary, we must hold that it was a question for the jury.

4. But that question was not submitted to the jury. The complaint was silent as to any unusual or extraordinary accumulation of water; but the answer expressly alleged that the melting of snow and the freezing of water in the culvert temporarily decreased and lessened the capacity of the culvert to carry off the water; that April 5, 1899, there occurred an unusual and extraordinary thaw, causing the sudden and rapid melting of snow and an unusual and extraordinary accumulation of water upon the west side of the highway and culvert; that such formation and existence of ice within the culvert, together with the extraordinary accumulation of water, caused an overflow of the highway at the culvert at the time of the intestate's death; and that the existence of ice within the culvert was unknown to the supervisors or citizens of the town before the accident. Such allegations of new matter in the answer must be deemed to have been contro verted by the plaintiff, as upon a direct denial or avoidance. Sec. 2667, Stats. 1898; *Ashland v. W. C. R. Co.* 114 Wis. 104, 89 N. W. 888. Such being an issue made by the plead-

ings, it should have been submitted to the jury in some appropriate form. This court has uniformly held that the formation of special verdicts is largely in the discretion of the trial court. *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 362, 77 N. W. 714; *Heddles v. C. & N. W. R. Co.* 74 Wis. 258, 42 N. W. 237. But the court has also frequently held that a special verdict which does not determine all the material and controverted facts in issue is defective, and that such defect is not waived by a failure to object to the questions submitted or to request the submission of other questions. *Sherman v. Menominee R. L. Co.* 77 Wis. 14, 22, 23, 45 N. W. 1079; *McFetridge v. Am. F. Ins. Co.* 90 Wis. 138, 142, 62 N. W. 938; *Western W. S. Co. v. Chippewa Co.* 102 Wis. 622, 623, 78 N. W. 764; *Hildman v. Phillips,* 106 Wis. 611, 616, 82 N. W. 566. The question recurs whether such failure to specifically submit the question suggested was cured by anything in the charge.

5. True, the court did submit to the jury the question whether such insufficiency or want of repair of the highway was the proximate cause of the death of the plaintiff's intestate. The scope of the question is so broad that the court might have instructed the jury in such a way that their answer would necessarily have determined whether on April 5, 1899, there occurred an unusual and extraordinary thaw, causing the sudden and rapid melting of snow and an unusual and extraordinary accumulation of water upon the west side of the highway and the culvert; and, if so, whether that was the proximate cause of the death of the plaintiff's intestate. But no attempt was made to submit such question to the jury. After defining "proximate cause," the court directed the jury to consider and determine whether the death was the natural and probable result of the negligence of the town, and whether, in the light of all attending circumstances, such an injury, or a similar injury, ought to have been foreseen by a

person of ordinary care. The jury were then told, in effect, that it was not necessary that the town authorities ought to have foreseen that there might be high water at some time, and that a person might come along and get off the road at this point and into the water and get drowned; but that it was sufficient if they believed that the highway was defective, and that the accident was the natural and probable result thereof, and, in the light of all attending circumstances in that vicinity, an ordinarily careful person ought to have fore-seen that some similar injury might be reasonably expected to occur and ought to have been foreseen as liable to occur. The charge left the jury to infer that the high water at the time and place in question was a condition which merely in-creased the danger of a previously existing defective high-way—in case they found it to be defective. But it excluded from their consideration the question so put in issue by the pleadings. We must hold that the failure to submit that ques-tion to the jury was not cured by the charge.

6. It is claimed that a verdict should have been directed in favor of the defendant on account of the contributory negli-gence of the deceased, and that the third finding of the jury is not sustained by the evidence. The case is broadly distin-guishable from *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946, relied upon by counsel. The line of the highway with parallel fences on the side was obvious to the traveler. As indicated, the deceased knew that the stage, and also a single horse and buggy, had just crossed over the culvert and through the water a few minutes before. She was unac-quainted with the highway at the place in question. We can-not hold, as a matter of law, that she was guilty of contribu-tory negligence. On the contrary, we must hold that it was fairly a question for the jury, as held in cases cited above. *Borchardt v. Wausau Boom Co.* 54 Wis. 107, 11 N. W. 440; *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939; *Jung v. Stevens Point,* 74 Wis. 547, 43 N. W. 513;

*Wiltse v. Tilden,* 77 Wis. 152, 46 N. W. 234; and *Wells v. Remington,* 118 Wis. 573, 95 N. W. 1094.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

DODGE, J., dissents.

The respondent moved for a rehearing, and the following opinion was filed June 10, 1904:

CASSODAY, C. J. On the motion for a rehearing, counsel graciously concede that the opinion filed is correct, in so far as it holds that there was no error in the admission of testimony, nor in refusing to direct a verdict in favor of the defendant, either on the ground that the highway was not defective, or that the deceased was guilty of contributory negligence; but otherwise the opinion filed is assailed as containing gross misapplication of principles of law stated, and for the misstatements of many facts, and this is done in such a way as to call for rebuke on the part of this court. It rarely happens that lawyers of good standing at the bar transcend the bounds of professional propriety in this court, even when smarting under the irritation of disappointment or defeat. But there have been exceptions, and so it happened, many years ago, that a rule, in the terse language of Chief Justice RYAN, was adopted, fixing a penalty "for printing any brief disrespectful to this court or any member of it, or to the court below, or to opposing counsel." Supreme Court Rule XXVII; *Hanson v. Milwaukee M. M. Ins. Co.* 45 Wis. 323, 325. We cannot think that counsel, in the case at bar, intentionally violated the rule, and so we assume that the rule was not in mind when the brief in question was written.

Of course, in the administration of the law, mistakes are liable to be made by this court as well as by counsel, and a mutual desire to correct any mistake in matters of substance should be indulged.

Counsel "call attention to a few of" what they term many "of the errors in the statement of facts found in the opinion filed." These errors consist in stating that certain facts therein mentioned "seem to be undisputed." Most of such statement of facts was taken from the appellant's brief. Such facts were not disputed in the brief of the respondent, except as hereinafter mentioned. The rule of this court, with which counsel are supposed to be familiar, required "the brief of the respondent" to "point out any insufficiency or *inaccuracy* in the brief of the opposite party, and supply, correct and answer the same in the order indicated." Supreme Court Rule IX. If there were any misstatement of facts in the appellant's brief, material to the questions decided, it was the plain duty of the respondent's counsel to point it out and correct the inaccuracy. As there was no attempt at such correction, except as hereinafter mentioned, the writer ventured to state that the facts so mentioned seemed to be undisputed.

The question recurs whether the opinion filed contains any substantial misstatement of fact material to the questions decided. It is said that instead of its being undisputed that the width of the road at the place in question was between thirteen and fourteen feet, as stated in the opinion, it appeared from the "plaintiff's evidence, based upon actual measurement, . . . . that the highway over the culvert was ten feet and three fourths of an inch." The witness referred to by counsel, and who participated in such measurement, testified that "Mr. Powers made the measurements of thirteen feet and three inches at the side of the cut. There had been a cut made to take the body out. From the west end of the culvert over to the cut on the east end, where the body was taken out, I think his measurement was ten feet three fourths of an inch, and he announced that. But the whole width of the road, which I regard as practically level, was thirteen feet and three inches." That was corroborated by several other witnesses. It was stated as uncontradicted in

the appellant's brief, and was not disputed in the respond-ent's brief, and no testimony is now referred to as supporting the unqualified statement of counsel. The same witness testified in the same connection that "at that time the distance from the left-hand traveled track, going north, to margin of the highway west, that was practically level, was three feet, as measured by me and others. It was practically the same when Mr. Powers measured it. The location of the entrance to the culvert was directly to the west of this three feet—still further west. There was a footpath at that time west of the west traveled track of the highway at the culvert, which ex-tended over the culvert, outside on the west side of the trav-eled track. All of the footpath was west of the traveled track. I don't know how far it went north—south of the culvert." That statement is corroborated by several witnesses, and was stated as a fact in the appellant's brief, but it was disputed in the respondent's brief. Counsel is right in claiming that it was error to state in the opinion filed that it was undisputed "that from the wheel track on the westerly side to the margin of the highway was from two and one half to three feet." As stated by counsel, witnesses on the part of the plaintiff put such distance from ten to eighteen inches. But such erroneous statement is not material to the questions decided in this court, although it may have been material in the trial court.

The opinion is further criticised as stating that it seemed to be undisputed "that the culvert was submerged by a stream of water about thirty-six feet wide, flowing from the hole described." But that is a perversion of the language of the opinion referred to, as published, which is as follows: "The highway at the culvert was submerged by a stream of water about thirty-six feet wide, flowing from the hole described over the road from the west to the east, and from six to ten inches in depth, and that the culvert was located about the middle of such stream of water." So the statement in the

opinion is not "that the culvert was submerged," but that "the highway at the culvert was submerged." As to the width of the stream so flowing over the highway, one of the plaintiff's witnesses testified that it was two rods, and its depth to the horse's knees. Another of the plaintiff's witnesses states that the width of the strip of water which flowed over the road April 5, 1899, as measured by Powers and Newland, was thirty-six feet. In charging the jury on the question of contributory negligence, the court spoke of the "sheet of water running over" the road there at the time as being "something like thirty feet in width." The opinion, as originally written, followed this statement of the trial court as to the width of the stream, but by some inadvertence the figure "30" got changed to "36," but that has since been corrected.

Counsel say that "the plaintiff simply contended that the *highway itself*, as it existed *without water* there at all, *was defective* and insufficient, and that such insufficiency proximately caused the death of the plaintiff's intestate." And yet counsel urge, as they have the right to urge, especially on the question of contributory negligence, that this flood of water concealed from the deceased the hole into which her wagon ran. Of course, the case must be determined upon the condition of things as they existed at the time of the accident. The complaint alleged, in effect, that at the time named the culvert in question was too small to carry off and discharge the water which naturally accumulated on the west side of the highway from heavy rains and the thawing of snow and ice. The answer alleged, in effect, that at the time and place in question there occurred an unusual and extraordinary thaw, causing the sudden and rapid melting of snow and an unusual and extraordinary accumulation of water, which caused an overflow of the highway. The court, among other things, charged the jury that "there is no claim made now that the culvert, as a culvert, was defective in not being sufficient *to ordinarily* carry away the surface water, consisting.

of sudden rises from rains and snows which might accumulate in the area or valley to the immediate west of this. So that you will not consider. The only thing you have a right to consider in answering some *other question* is the *effect* of this water at that time." It is now claimed that there is no evidence to take the case to the jury upon the questions so put in issue by the pleadings, and which we held should have been submitted to the jury. There is certainly evidence tending to prove that on the day of the accident and the day before it was very warm and melted the snow and ice, and that the highway was never overflowed there before; that "this flood was caused merely by the melting of snow"; that "there was ice in the culvert"; that "the top frost was out of the ground in the ravine west of the culvert"; that "there was just a trifle of ice in the bottom of the hole, and some mud there." The evidence as to the size of the stream over the road and the extent of the flood have already been mentioned. We think the evidence is sufficient to take the case to the jury upon the question of the unusual and extraordinary accumulation of water, so at issue, and which we have held ought to have been submitted to the jury directly or under the question of proximate cause.

*By the Court.*—The motion for a rehearing is denied.