SWEETMAN, Respondent, vs. CITY OF GREEN BAY, Appellant.

*October 7, 1911—January 9, 1912.*

*Highways: Defects outside of traveled track: Injury to traveler in automobile: Contributory negligence: Questions for jury.*

1. Whatever may be the width and suitableness of the traveled track of a highway, there may exist dangerous defects outside of such track,—much depending on the nature and situation of the alleged defect, whether it can plainly be seen, and whether it is so connected with the traveled track as to affect the safety of those using the highway in the ordinary way and in the exercise of ordinary care.

2. In view of the general condition of intersecting streets within city limits, and their immediate surroundings and the way in which they were being used, a jury was warranted in finding that an unguarded pit or open ditch, six feet long, two feet wide, and sixteen inches deep, at the end of a culvert and close to the traveled tracks of both streets, was an insufficiency rendering the highway not reasonably safe for use by the traveling public.

3. Whether or not a person who, while driving an automobile at a lawful rate within the traveled portion of the street, failed to observe such ditch in time to avoid it, was guilty of contributory negligence, is *held*, upon the evidence, to have been a question for the jury.

4. The defense of contributory negligence must be affirmatively established.

MARSHALL, J., WINSLOW, C. J., and VINJE, J., dissent.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

This is an action to recover the damages resulting to the plaintiff through his automobile running into an open ditch on one of the highways of the defendant city of *Green Bay.*

The intersection of Ninth street and Ridge road in the city of *Green Bay* is in a rural neighborhood near the city limits. Ninth street runs east and west and Ridge road north and south. Ridge road south of Ninth street is of the same width as north of it, but the center line of the highway south of Ninth street is about six feet east of the center line of the highway north of Ninth street. Both of these highways are turnpiked along their central portions, and at their intersection there has been some filling at the angles formed by the intersection of the turnpiked portions of the highways. About fourteen feet to the north of the southern boundary line of Ninth street a culvert has been placed across the turnpiked portion of Ridge road. This culvert extended about eighteen inches west of the travel on the intersection. An open ditch about two feet wide at the top, sixteen inches deep, and six feet long extended directly west from the culvert and drained water into the culvert. The traveled track over the culvert extended its full length except about a foot and one-half at either end. This culvert was forty feet long.

On the morning of September 9, 1909, the plaintiff, a physician and surgeon residing in the city of *Green Bay,* was driving his automobile at a rate of speed of about eleven miles per hour south on Ridge road on his way to make a professional call in the country. The road was muddy and slippery, and to get a better foothold for his car he was driving it on the road north of the intersection with Ninth street, with the two west wheels on the grass outside of and to the west of the traveled track but still upon the turnpiked portion of the highway. Across the intersection of the highways the plaintiff took a course with his car so that he could occupy that part

of the highway south of Ninth street which was relative to the traveled track like that he had taken in approaching Ninth street. While crossing the intersection of the streets and when about ten or twelve feet from the culvert the plaintiff observed the open ditch west of the culvert in the course of his car. He immediately shut off the power, applied the emergency brake, and attempted to steer his car to the east so as to avoid the ditch. It was impossible to stop the car within the distance he was from the ditch, neither was it possible to steer it far enough to the east to avoid the ditch, and the west wheels of the automobile ran into the ditch. The car was damaged and unfit for use until repaired. There was no barrier or sign at the end of the culvert or near the ditch to apprise travelers on the highway of the ditch, and the culvert and ditch were not readily observable by travelers while crossing Ninth street going south on Ridge road. The plaintiff was under the necessity of hiring a livery rig to make his calls, put in more time in making his calls, and was put to the expense of repairing his automobile.

The jury found by special verdict that the highway was insufficient at the place of accident and not reasonably safe for use by the traveling public, that the insufficiency proximately caused the injury to the plaintiff's automobile, and that no want of ordinary care on the part of the plaintiff proximately contributed to the injury. They assessed his damages at $100.

The court was of the opinion that $60 would cover the plaintiff's damages directly resulting from the injury to his automobile, and gave him an option to take judgment for that amount and costs or to have the verdict set aside.

This is an appeal from the judgment in plaintiff's favor for $60 and costs.

*T. P. Silverwood,* for the appellant.

For the respondent the cause was submitted on the brief of *Cady, Strehlow & Jaseph.*

The following opinion was filed October 24, 1911:

SIEBECKER, J.   The appellant urges the reversal of the judgment in plaintiff's favor upon the ground that there is no evidence showing any insufficiency and want of repair of the highway, and urges that it appears as matter of law that the injury to the plaintiff's automobile was caused by his contributory negligence.

The evidence is undisputed that no guard, barrier, or fence had been erected at the end of the culvert or near the ditch connected therewith at its west end.   The location of the culvert, the ditch, and the traveled part of the highway are as set forth in the foregoing statement.   The claim is made by the appellant that the evidence incontrovertibly and clearly shows that the city at the place in question maintained a reasonably safe road for public use.   The evidence is that there was a ditch two feet in width, sixteen inches deep, and from six to eight feet long connected with the culvert, which was located in Ridge road on the Ninth street crossing, and that the travel to and from the south over these highways at the crossing was about eighteen inches from the west end of the culvert.   It also appears that the traveled track on Ninth street was close to the margin of the ditch, and that travel over the area at the intersection of the two highways had spread out and covered nearly the whole of the forty-foot culvert.   The ground at this place before the grading of the highway was almost level, having a gradual slope southeastward.   It is manifest from the facts in evidence that there was no natural object to apprise travelers of the existence of the ditch and culvert, aside from the open ditch itself, which was in the surface of the ground, practically level with the area formed by the intersection of these highways.   There is evidence tending to show that the culvert was covered with earth to its end on the west, and that it and the ditch connected with it were not readily observable at a distance on account of the

evenness and the similarity of the surface bordering both sides. It is manifest from these conditions of the highway that the ditch constituted a pit at the end of the culvert and that vehicles could not safely pass over it. The general conditions of this highway and its immediately surrounding objects, and the way in which the adjoining tracks over the intersection of the streets were being used, indicate that a pit sixteen inches deep and two feet wide at the end of the culvert and approximately eighteen inches from the traveled track was such a menace to travelers as to constitute a serious danger to their safety.

It is argued that this does not constitute an insufficiency in the road, because the defendant had provided for public use at this point an amply wide and level traveled track of about thirty-seven feet in width, and hence that this ditch could not render the place dangerous to travelers properly using it in the exercise of reasonable care. This overlooks an essential factor of what is a reasonably safe highway, namely, whatever may be the width and suitableness of the space actually occupied as a traveled track of a highway "there may exist dangerous defects and obstructions outside of the traveled path, depending on circumstances. Much depends on the nature and situation of the alleged obstruction [defect] and whether it is plainly to be seen or not," and whether it is so connected with the traveled track as to affect the safety of the public using it in the usual and ordinary way while exercising ordinary care. We are persuaded that the jury were fully justified in their conclusion that this unguarded pit or ditch was such a danger connected with the traveled track as to make it an insufficiency in the highway crossing and rendered it not reasonably safe for use by the traveling public within the principle of the following cases: *Wheeler v. Westport,* 30 Wis. 392; *Seymer v. Lake,* 66 Wis. 651, 29 N. W. 554; *Slivitski v. Wien,* 93 Wis. 460, 67 N. W. 730; *Prahl v. Waupaca,* 109 Wis. 299, 85 N. W. 350; *Jenewein v. Irving,*

122 Wis. 228, 99 N. W. 346, 903; *Maxwell v. Wellington,* 138 Wis. 607, 120 N. W. 505.

It is further contended that, if the highway is regarded as insufficient, the plaintiff is not entitled to recover because it appears that he was guilty of contributory negligence which proximately contributed to cause the injury to his automobile. The court submitted the evidence upon this inquiry to the jury under proper instructions and the jury found him free from contributory negligence. The trial court upon review of the case again concluded after verdict that the question of plaintiff's contributory negligence under the evidence was properly for the jury. Counsel's contention on this issue seems to omit due consideration of the rule that the defense of contributory negligence must be affirmatively established. *Seymer v. Lake,* 66 Wis. 651, 29 N. W. 554; *Cantwell v. Appleton,* 71 Wis. 463, 37 N. W. 813; *Rhyner v. Menasha,* 97 Wis. 523, 73 N. W. 41. "The correct inquiry in such case . . . is not whether there is evidence to support the finding of the jury, because that may be supported by lack of evidence in whole or in part, but whether there is uncontroverted evidence" (*Clary v. C., M. & St. P. R. Co.* 141 Wis. 411, 123 N. W. 649) which shows plaintiff guilty of a want of ordinary care which proximately contributed to the injury. The facts mainly relied on to show plaintiff's want of ordinary care that contributed to this injury are that he approached this highway crossing by running the two wheels of his car outside of the traveled track and that he designed to do likewise after passing this crossing, that he took a course over the crossing which, had he proceeded straight forward, would have run the left front wheel into the ditch as well as the right wheel, and that he omitted to keep a lookout for the ditch or pit until he had approached it so closely that he could not turn his car so as to pass over the culvert in safety. It must be borne in mind that plaintiff was within the traveled portion of the highway at the time he first saw this pit, that

he was traveling at a lawful rate of speed, and that the evidence is uncontroverted that he was giving his attention to and observing the road at the crossing and to the south of the crossing; that he testified that he did not observe the pit until he was within ten or twelve feet of it; that he then did all he could to stop the car and all he could to steer it to the east to avoid the ditch, but failed by about a foot and one-half. It appears that up to the time he saw the pit he traveled upon the proper part of the highway, that it was difficult for travelers on the road to see the pit on account of its obscurity in the light of the conditions surrounding it, and that it was so connected with the traveled track as to render the road unsafe and dangerous for travel. The defective condition of the highway has an important bearing on the other facts interpreting the significance of the plaintiff's action. See *Cantwell v. Appleton,* 71 Wis. 463, 37 N. W. 813. To aver that the fact that he did not see the ditch in time to avoid it shows affirmatively plaintiff's contributory negligence is in substance a contradiction of the conclusion above reached that the road was insufficient and defective, for if coming into contact with this ditch while passing over the highway in the ordinary way of using the traveled part thereof is negligence, then it was no failure of duty on the part of the city to omit putting up a guard, fence, or barrier to warn the public of the existence of this pit. We have shown above that this must, under the adjudications, be deemed a defect by reason of the fact that it rendered the road not reasonably safe. *Wheeler v. Westport,* 30 Wis. 392. We find nothing in the record as to plaintiff's conduct leading to the irresistible conclusion that he was guilty of a want of ordinary care. We consider that the facts and circumstances disclosing the manner in which he used the highway at the time in question do not affirmatively establish his contributory negligence as matter of law, and that the trial court properly submitted this issue to the jury.

There is no error in the record.

*By the Court.*—Judgment affirmed.

The following opinion was filed November 8, 1911:

MARSHALL, J. (*dissenting*). In my judgment, whether the highway was reasonably safe under the circumstances, is not material, since the evidence of respondent, it seems, clearly convicts him of contributory negligence. On this branch, as it appears to me, the court's opinion unwarrantably suggests that counsel for respondent "omit due consideration of the rule that the defense of contributory negligence must be affirmatively established." I do not perceive any such infirmity in counsel's argument. On the contrary, it seems to recognize the suggested rule and also this companion rule which the court appears to have overlooked: When the evidence on the part of the plaintiff clearly discloses contributory negligence, he cannot recover. Such negligence, thus disclosed, is just as efficient as when established in the most conclusive manner by evidence on the part of the defendant. That rule is very old and has never been considerately departed from, though, I must say, its dignity, now and then, as in this case, may not have been fully appreciated. *Achtenhagen v. Watertown,* 18 Wis. 331; *Hoyt v. Hudson,* 41 Wis. 105; *Prideaux v. Mineral Point,* 43 Wis. 513, 524; *Randall v. Northwestern T. Co.* 54 Wis. 140, 11 N. W. 419; *Kelly v. C. & N. W. R. Co.* 60 Wis. 480, 19 N. W. 521; *Owen v. Portage T. Co.* 126 Wis. 412, 105 N. W. 924; *Langhoff v. C., M. & St. P. R. Co.* 19 Wis. 489.

It is a mistake to suppose the doctrine, that a plaintiff to make out a case of actionable negligence, must show defendant to have been guilty of a want of ordinary care proximately producing the injury, and also that he, himself, was free from such contributory fault, declared in *Chamberlain v. M. & M. R. Co.* 7 Wis. 425; *Dressler v. Davis,* 7 Wis. 527, and similar early cases, has been overruled or modified, except as stated in *Milwaukee & C. R. Co. v. Hunter,* 11 Wis. 160. There the court, speaking by Mr. Justice PAINE, materially limited them, but affirmed that for plaintiff to possess a *prima*

*facie* case at the close of his evidence, he must show freedom from contributory negligence. Such early cases, thus limited and affirmed, have been reaffirmed, from time to time, down to date, as indicated in *Pfeiffer v. Radke,* 142 Wis. 512, 125 N. W. 934. That is to say, in so far as such early cases may be read as holding that plaintiff in a negligence action, to make out a *prima facie* case, must show want of ordinary care on the part of defendant, proximately causing the injury, and also establish, affirmatively, that is actively, freedom of himself from contributory negligence, they were repudiated, and such repudiation has been firmly adhered to. That does not militate against the rule that, generally speaking, plaintiff, to make out a case, must show such freedom though not, necessarily, show it affirmatively.

The logic of the foregoing is easily seen, as follows: Contributory negligence is matter of defense, and, therefore, must, as a rule, be established by the defendant, not by plaintiff as part of his case, because of the fact that men, in general, are supposed to act with ordinary care for their personal safety. Plaintiff may rely on that presumption in his favor if he can otherwise make a *prima facie* case without destroying it. So, while we say, the burden of proof in respect to contributory negligence is on the defendant, to be accurate, it is just as true, as early decided, that to make a case in plaintiff's favor, the latter must show, as an essential, freedom from contributory negligence. However, he can rest upon the presumption in his favor till it shall have been overcome by his own disclosures or evidence on defendant's part, having regard to the rule that it must be overcome with the same conclusiveness that any fact must be established by evidence in the face of opposing evidence or presumption, and the labor of lifting the burden of proof in respect to the matter. That has been many times carefully elucidated. Over and over again it has been said:

"Plaintiff is not bound in the first instance to show that he was not guilty of negligence which contributed to the injury,

but is bound only to establish a *prima facie* case;" "but, if the plaintiff's own evidence raises an inference of negligence against himself, he must in order to establish a *prima facie* case show that he was not guilty of negligence" (want of ordinary care) "contributing to produce his injury." *Murphy v. Herold Co.* 137 Wis. 609, 614, 119 N. W. 294.

As said in *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839:

While contributory negligence is an affirmative defense and the burden of proof is on defendant to establish it by a preponderance of evidence, "it is immaterial whether the evidence establishing such negligence is given by the witnesses for the plaintiff or the defendant."

So it will be seen that, unfortunately, in endeavoring to state a sound basis for its decision the court gave such prominence to a well known rule,—without, seemingly, appreciating for the time its limitations and exceptions, using the language without qualification, "the defense of contributory negligence must be affirmatively established,"—that one not well grounded in the real logic of the law of negligence might fairly reason, applying the language to the case in hand, that the defense of contributory negligence must, necessarily, to be efficient, be established by evidence produced by the defendant; and, if familiar with the subject as treated in our books, come to the conclusion that the court is disposed, at this late day, to run counter thereto in the instant case. It seems impossible to prevent confusion of that sort now and then creeping into our jurisprudence, to become a troublesome factor in future litigation, in addition to the mischief of it in the given instance. That would seem to be a criticism upon the trite saying that the law is a science. But not so. The seeming difficulty is not with the law but is in the infirmity of human instrumentalities. With all due care which can be exercised, courts will make mistakes, and must necessarily, if they would come as near as practicable to the standard of ideal justice, be ever ready to correct them.

In closing on this subject I must say, notwithstanding the appearance to the contrary, I do not think the court consider-.ately, if at all,—probably the latter,—intended to change the rule that a plaintiff in a negligence action may as readily die by suicide, so to speak, as by the weapon of his adversary. He may, himself, as effectually destroy the presumption in his favor of due care, as the defendant could possibly do it under any circumstances by his own affirmative evidence. However, when one faces the facts here, as I will endeavor to give them, accurately, accompanied by an illustrative diagram, in connection with the language of the court's opinion, he is rather forced to the conclusion that such rule was lost sight of or such facts were misunderstood.

The following are the precise circumstances as I gather them from the evidence. I will endeavor to state them in the most favorable light for respondent which they will reasonably bear. I find myself compelled to make this statement in order to present clearly my view of the facts, since I cannot escape the conclusion, as will be seen, that the court has misconceived them to some extent.

The accident happened in the daytime when plaintiff had a good opportunity to observe the course of the roadway at the crossing as he approached the culvert. He was a physician, on the way to make a professional call. He was going at about eleven miles per hour and keeping a lookout ahead. It had been raining, rendering the roadway slippery, which caused him to run partly outside the traveled way on the · grass, so as to secure a good footing for his automobile wheels. Ridge road runs north and south. It was turnpiked in the usual way. The surface of the pike was of generous width and sloped gradually on either side, to a drain about one and one-half feet below the level of the traveled track. It intersected at right angles with Ninth street, angling east in crossing from the north some ten feet. The street was turnpiked the same as Ridge road. The surrounding country was of

rural character.  The only difficulty with the road was pro-
duced by a culvert across it within the intersection and about
fourteen feet north of the south line of Ninth street.  It was
made of plank, was some forty feet long and one foot square.
The west end was nearly on a line with the traveled track in
Ridge road at the north side of the street, so, if a person failed
to angle east in making the crossing, he was liable to run off
the west end of the culvert where there was a ditch, two feet
wide and sixteen inches deep with substantially perpendicu-
lar sides, extending west from the west end of the culvert about
six feet.  The traveled roadway at the culvert was about
thirty-seven feet wide and extended to within about a foot and
a half of the west end of the culvert.  The main traveled track
of the north and south road was about in the center of the
culvert, or some eighteen feet from the west side of such track
to the west end of the culvert.  The travel from such main
track to within one and one-half feet of the west end of the
culvert was, mainly, such as turned from West Ninth street
to South Ridge road, or *vice versa,* and on an expanded, so to
speak, curved line which reached to near, as stated, such west
end.  In traveling south on Ridge road at the crossing, keep-
ing in the regular course, the west wheel of a vehicle would
pass some eighteen feet east of the west end of the culvert.
If one did not angle east with the main track but kept on di-
rectly south, the west wheels of his vehicle would still be some
little distance from such west end.  He could only reach the
ditch wholly west of the culvert, in traveling directly from the
north, by approaching on a line not only wholly west of the
traveled track but partly west of that portion of the way pre-
pared for travel, the distance from the regular course increas-
ing after reaching the crossing up to a maximum of over eight-
een feet at the brink of the ditch.  The travel on Ninth
street and Ridge road, together with the connecting expanded
curved lines, so involved the crossing area that there was very
little, if any, grass within the boundaries of the curved lines

even outside of the main tracks. It was two rods or more from the center of the crossing, in either direction away from it on either roadway, to the point where the course of travel was substantially confined to one track in the center of the pike. So, though at the culvert the roadway was about thirty-seven feet wide, south of it a little way, it narrowed to the usual width. From two feet or so outside the general course of travel on either pike and outside the curved track the surface was covered with a low growth of grass and weeds. The grassed-over surface on either side of either road was broken at the intersection of the lines of the pikes, the grassed-over portion taking a convex form, according to the natural course of travel from one street into the other. The result was that one, in traveling south, partly over the grassed-over portion of Ridge road on the west side would, upon reaching a point a few feet south of the north line of the cross street, without changing his course, wholly leave such portion and enter within the course of travel turning from one road into the other on the west. Proceeding straight south, two rods or so, he would reach the grassed-over part of the way on the southerly side of the pike from the west, at the connection with the slope of the pike on the west side of Ridge road, some sixteen feet north of the south line of the street, and, as he reached the grassed-over portion and failed to angle east with the course of travel over the west end of the culvert, he would pass wholly onto the grassed-over portion of the intersection of the ways, go entirely to the right of the traveled way and some nineteen feet west of the main course of the traveled way on Ridge road across the intersection, and west of the west end of the culvert; thus reaching the ditch, extending from such end west on a line with the drain on the south side of Ninth street, west of the crossing. Plaintiff took that course. As before indicated, he approached the crossing, traveling south at a speed of eleven miles per hour, with the west wheels and at least half of his machine outside the roadway and on the

grassed-over side.    Instead of angling east, as he reached the crossing and came within the intersection of travel where there was no grassed-over part, he made directly south or angled a little west for the opposite side where he could as quickly as possible strike the grass again.    Reaching that point, he was wholly west of a line projected south to the west end of the culvert, in a course where his machine was pointing wholly outside of the roadway, so it could run wholly on the grassed-over portion, and was within twelve feet or so of the ditch. At such point he discovered his mistake, saw the ditch, and did all he could to turn to the left so as to reach the culvert or bring the machine to a stop before reaching the ditch, but he was unable to do so.    He turned so the west front wheel mounted the end of the culvert and the right one went into the ditch.    He observed the jog in the road as he approached the crossing, but proceeded without angling accordingly, in order to get the benefit, as soon as practicable, of the grass for not only the right front wheel but for all the wheels of his machine.    When he nearly reached the grass, going at the rate of speed he was, it was too late for him to successfully swerve to the left.    He was not familiar with the condition of the road from having observed it before.    The grassed-over portion west of the culvert and north of the ditch did not reach sufficiently east and north but that, as plaintiff approached it, the point where the ditch was located seemed to be nearly or quite in the way prepared for travel, though not in the traveled track and rather across it.    He could have seen the ditch had he looked carefully for the condition at the west end of the culvert, but he did not look, particularly, not suspecting such condition and being intent on running his machine and gaining the advantage of the grass.

The plat on page 600 will enable one to fully understand the foregoing.

Thus, it will be seen, respondent, wholly for his own convenience, was traveling, when the accident occurred, outside

the proper course,—the one prepared for such use and the one regularly used.   He was not, merely, slightly outside.

He was nearly one third the ordinary width of a highway aside from his proper course.   He was going at the rate of nearly fifteen feet per second, aiming for the drain on the

west side of the pike at the south, which he confessed he was not familiar with. He was not only far out of his proper course but going so fast that he could not stop under about twenty feet, and, that, making for a place,—the side drain of a pike,—where, as a matter of common knowledge, it is not safe to travel at such a rate of speed unless one knows his ground. He did not have even the excuse of need for it. He did as indicated merely to get a better footing for the wheels of his machine, which he could have gotten by the labor of putting on his wheel chains, as he confessed.

I read with surprise the language of the opinion: "Plaintiff was within the traveled portion of the highway at the time he saw the pit," as if he were in such portion in the course from north to south on Ridge road. True, he was in a traveled portion but merely because he was crossing, almost at right angles, the curved track connecting West Ninth street with South Ridge road,—not in the course of travel from north to south on Ridge road or any other course of travel.

If one should, knowingly, plunge with an automobile, going at the rate of fifteen feet per second, directly across any pike aiming for the ditch at the side of it, and run into an obstruction far out of the course of travel, as well might he be said to be free from contributory negligence because he could not see the obstruction while his machine was yet in the road but crosswise of it, as is said of the respondent in the language quoted.

Again the decision is grounded on the fact, so stated, that respondent was "running at a lawful rate of speed," as if there were any regulations for speeding outside of the regular course of travel and along the sides and drains of turnpikes. True, "he was giving attention to and observing the road at the crossing." He testified to that. He observed the course of travel angled to the east. But his observation was not taken for the purpose of keeping within the road, but keeping outside of it, as he frankly repeatedly testified.

My somewhat lengthy review of this case for the purpose of

showing that the decision rests on misconception of the facts seems well justified from the circumstance that the court cited *Cantwell v. Appleton,* 71 Wis. 463, 37 N. W. 813, and *Wheeler v. Westport,* 30 Wis. 392, in connection with again suggesting that, respondent was traveling in the ordinary course, as if the case here was within the principle of one where a person while traveling in that portion of the highway prepared therefor inadvertently sidesteps, or accidentally, momentarily, wanders from or leaves it, reaching a defect therein and is injured.   I am wholly unable to understand how such cases have any application here, or how it can be said respondent was in the regular course of travel as applied to travel from north to south on Ridge road, which is the case here, or any other road.   He admitted that he was not in such a course of travel and was seeking to avoid being so.

Now it would seem that the foregoing without reference to authority indicates, clearly, that respondent was acting almost recklessly at the time he came up to the ditch.   Moreover, as I understand it, this court has repeatedly decided that such conduct as purposely traveling outside the way provided therefor, as here, is contributory negligence as a matter of law. Counsel for appellant in appealing to this court relied, and it seems had a right to rely, on those cases.   They, or most of them, were cited to our attention.   It is unfortunate that they were not referred to by the court and some attempt made to give some reason why they do not apply to the facts.   I must assume the omission to give attention thereto is explained by the frequent statement in such opinion that respondent was attempting to make the crossing in the ordinary course of travel when he came upon the peril which he then had no time to escape from.   If that were so, such cases, of course, do not apply.   But how can we escape the conclusion that he was not only outside the course of travel, speaking as we must of the travel from north to south on Ridge road, but was trying to avoid such course,—go wholly outside thereof and the course

of travel on either road.    The act of traveling for one's mere convenience outside of the way prepared for the public is condemned as fatal contributory negligence in the following cases: *Wheeler v. Westport,* 30 Wis. 392; *Kelley v. Fond du Lac,* 31 Wis. 179; *Hawes v. Fox Lake,* 33 Wis. 438, 443; *Matthews v. Baraboo,* 39 Wis. 674, 679; *Cremer v. Portland,* 36 Wis. 92, 99; *Cartright v. Belmont,* 58 Wis. 370, 17 N. W. 237; *Goeltz v. Ashland,* 75 Wis. 642, 44 N. W. 770; *Welsh v. Argyle,* 89 Wis. 649, 62 N. W. 517; *Rhyner v. Menasha,* 97 Wis. 523, 73 N. W. 41; *Boltz v. Sullivan,* 101 Wis. 608, 614, 77 N. W. 870; *Hammacher v. New Berlin,* 124 Wis. 249, 102 N. W. 489.

The extensive list of authorities does not contain any material addition to those cited by counsel.   He industriously collated substantially all adjudications of this court on the subject.    That such authorities are to the point, and decisively so, can readily be seen, in my judgment, when one with full appreciation of the facts reads the rule stated time and again therein in this language, or substantially this:

When a person "without necessity or for his own pleasure or convenience voluntarily diverts from the traveled track which is in good condition and, in so doing, meets with an accident from some cause outside of the traveled track, the town will not be responsible for any damage or injury which he may sustain."

There is no question here but that the traveled track north and south was in good condition.   It was much wider than commonly.   One could swerve from the main way to the left or to the right at the culvert some eighteen feet without any danger from the ditch or anything else.   If there were any defect whatever, it was in the construction of the way for the turn from West Ninth street into South Ridge road and at a point, as we have seen, far removed from the course of travel or prepared way from North to South Ridge road.   In *Hammacher v. New Berlin, supra,* there was a pike, culvert, and

ditch.    It was conceded for the case that the highway might well be held defective for want of a railing at the end of the culvert toward the ditch.    Plaintiff left the prepared way and on that account reached such ditch and fell into it.    There was some excuse for his leaving the regular way.    It was not a case of intentional leaving, as in this case.    He diverged more through forgetfulness than anything else.    The course he took was such that if there had been a railing at the end of the culvert he would have fallen in just the same because his course was wholly outside of where a railing would have been any protection.    The entire situation was quite like this case. The difference only emphasizes my claim that respondent here was well nigh reckless.    The court said:

"If plaintiff had been using the traveled track, and stepped off from the end of the culvert, probably there would have been a question for the jury whether the lack of a rail or guard constituted negligence, and also whether plaintiff was exercising due care in his traveling.    But that was not this case. . . . He was knowingly using a part of the highway which had not been prepared for public travel.    In so doing he walked into the ditch.    No railing or guard designed for the purpose of protecting persons traveling on the prepared way from the danger of falling off the end of the culvert would have prevented plaintiff from falling into the ditch."

So here if plaintiff had been using the traveled way over the culvert from North Ridge road to South Ridge road or from West Ninth street to South Ridge road, or *vice versa,* and by some excusable circumstance he had swerved to the right too far, there might have been a jury question presented. But he was not.    He was, at best, in the road from West Ninth street to South Ridge road, but crosswise thereof when he found himself in peril.    It is too strained altogether, I should say, to argue that he was in the traveled way, within the meaning of the authorities, merely because he was in the traveled way of a road out of his course and crosswise of such way, making for a place outside of any traveled way, or way prepared for travel.

I think the judgment should be reversed and cause remanded with directions to dismiss the cause with costs.

WINSLOW, C. J., and VINJE, J.   We concur in the foregoing opinion.

A motion for a rehearing was denied January 9, 1912.