ALLEN and another vs. THE CITY OF CHIPPEWA FALLS.

*May 10 — June 4, 1881.*

CITIES. *(1) Construction of streets and gutters to carry off water.*
REVERSAL OF JUDGMENT: *(2) For misleading instructions.*

1. A city, in grading its streets and constructing gutters thereon for carrying off surface water, is not bound to provide against extraordinary storms such as private persons of ordinary prudence do not usually anticipate and provide against.
2. A judgment will be reversed for instructions which, even though abstractly true, are inapplicable to the facts in evidence, and probably misled the jury to the appellant's prejudice.

APPEAL from the Circuit Court for *Dunn* County.

This action was commenced in the circuit court for Chippewa county. The complaint alleges, in substance, that the defendant city so negligently and unskilfully constructed and graded streets within its limits (including Bridge and Central streets, which crossed each other at right angles) as to cause the water which theretofore had passed over and along the line of said streets, to be thrown in large quantities upon premises occupied by the plaintiffs; that, previous to the constructing and grading of said streets, a large portion of the territory within said city limits was of a low and marshy nature, and often inundated by heavy falls of rain and the melting of snows; that the natural slope and surface of said soil and territory was such as to cause, and did cause, the water when so accumulated to flow in another direction than upon the lines of said streets or either of them; that the defendant, by the negligent and unskilful manner in which it constructed and graded its streets, caused all the water which from time to time accumulated on said marshy tract, to flow into, upon and along said Bridge and Central streets, and to accumulate in a basin or hollow near the intersection of said streets, and near the premises occupied by the plaintiffs; that whenever there occurred heavy or unusual falls of rain or accumulation of

water by the melting of snow and ice, all of the said water from a large portion of the defendant city was, by reason of the negligent and unskilful manner in which said Bridge street was constructed and graded, diverted from its natural and usual course, and was directed to and accumulated in the basin or hollow above mentioned; that in the constructing and grading of said streets the defendant carelessly and unlawfully neglected and failed to provide gutters, sewers or other means for carrying off and discharging the large amount of water so accumulated, and in consequence of such neglect and failure the said water overflowed the street and emptied itself upon block 22 in the defendant city; that the plaintiffs were copartners, and were on the 12th day of June, 1877, and for some time prior thereto had been, in possession of lot 2 of said block 22, and were engaged in erecting thereon a block of brick stores, which was nearly completed; that on said day there occurred a heavy fall of rain, and the water that fell upon the marshy tract above mentioned and upon Bridge and Central streets, was collected and conducted into and upon said streets, and overflowed the same, and was discharged in large quantities upon said lot 2 of block 22, and undermined, washed away and destroyed the foundations of said buildings, and caused the walls thereof to fall in complete ruins, and totally destroyed the same; that the damage to the plaintiffs from the falling and destruction of said buildings was the sum of six thousand dollars; and that such damage was caused solely by reason of the negligent and unlawful acts of the defendant above set forth, and not by the negligence, fault or unlawful act of the plaintiffs or either of them.

The answer contains a general denial, and a further allegation that the plaintiffs contributed to the damage by their negligence in obstructing the watercourse and gutters in front of the building in question.

After a trial in the circuit court for Chippewa county, in which the jury disagreed, the venue was changed upon the ap-

plication of the plaintiffs, to Dunn county, and the cause was there again tried. The evidence given upon such second trial, and the instructions of the court, will sufficiently appear from the opinion. There was a verdict for the plaintiffs; a motion for a new trial was denied; and from a judgment on the verdict the defendant appealed.

*John J. Jenkins,* for the appellant.

For the respondents there was a brief by *Bingham & Pierce* and *H. Richardson,* and oral argument by *Mr. Bingham:*

It is negligence, in undertaking to grade a street, to omit to make provision for carrying off the waste water necessarily collected, whereby adjacent premises are overflowed. Shearm. & Redf. on Neg., sec. 375; *Spelman v. Portage,* 41 Wis., 144; *Pettigrew v. Evansville,* 25 id., 223; Wood on Nuisances, 407; *Butler v. Peck,* 16 Ohio St., 334; *Mills v. Brooklyn,* 32 N. Y., 489; 67 id., 204, 267. A municipal corporation has no more right than a private individual to erect and maintain a nuisance; and an action for injuries occasioned by such a nuisance can be maintained against such a corporation in like manner as against an individual. *Harper v. Milwaukee,* 30 Wis., 372; *Hoyt v. Hudson,* 27 id., 656. The owner of an estate cannot gather the water into one volume by means of a ditch, and thus discharge it upon a lower estate. Nor can this right be acquired by user. . Wood on Nuisances, 407, 408; 50 N. H., 439; 9 Am. R., 276. No one has the right to increase the flow of surface water by adding thereto water which does not originate from natural causes. And if, by artificial means, a person add to the natural flow of water passing over the surface of his land, he is liable even though no actual damage ensues. Wood on Nuisances, 406, 407; 37 Vt., 475; 9 Mass., 428; 16 Ohio St., 334.

COLE, C. J. The counsel for the city insists that certain propositions of law, laid down in the charge of the court and in the instructions given, were erroneous, and calculated to

mislead the jury as to the measure of the city's liability. After a careful examination of the charge, we think the point well taken. The first exception relied on is the one taken to that portion of the charge of the learned circuit judge wherein the jury were instructed that if the evidence showed that the authorities of the city, by changing the grade of any of its streets, diverted water from the marshy ground mentioned in the case from its natural outlet, so as to make it run into the lots in question, without providing and maintaining sufficient sluiceways or gutters to carry it by the premises occupied by the plaintiffs, thereby causing injury to their building, this would be actionable negligence on the part of the city.

The criticism made on this charge is, that, even if it is sound as an abstract proposition, it was not applicable to the facts proven on the trial. It is certainly true that all the testimony shows the plaintiffs' building was destroyed by a violent and unusual storm of wind and rain, not by water diverted from the marshy ground, or any other source. It did appear from the evidence that north of Mill and west of Bridge street there was considerable low, swampy ground, where there were some springs; and that, before the change in the surface of the land, caused by the erection of buildings and the laying out and grading of streets, the surface and spring water from this swampy ground passed off between Bridge and Bay streets south into the Chippewa river, in a different direction from the one it now flows in. But it was not this water which caused the damage, nor is the diversion thereof the grievance of which the plaintiffs complain; for really there is no ground for saying or claiming that the city, by changing a natural watercourse, turned water upon the plaintiffs' building and destroyed it. Any remarks, therefore, applicable to such a state of facts were not pertinent, and might possibly tend to confuse or mislead a jury to the detriment of the city. It seems needless to observe that the city, under its charter, had the undoubted right to establish the grade of its streets, and in the execution

of the grade the existing drainage of surface water might be changed or destroyed.

In *Hoyt v. The City of Hudson* it was held, that where the passage of surface water is obstructed by a city in grading and improving its streets, the owner of adjacent land injured by such obstruction cannot recover damages therefor. Chief Justice DIXON in that case reviews the authorities at considerable length, and reaches the conclusion that this is the better rule of law upon the subject. . But that question is not necessarily involved here, inasmuch as the liability of the city is placed upon the ground that, in constructing and grading its streets, it carelessly and unlawfully failed to provide gutters, sewers and other means for carrying off safely, by the premises occupied by the plaintiffs, the large amount of water which would accumulate and empty into Central and Bridge streets in heavy rain-falls.

An exception was taken to an instruction, given at the request of the plaintiffs, which reads as follows: "No person or corporation has the right to increase the flow of surface water by adding thereto water which does not originate from natural causes; and if the jury find, in this case, that the defendant, by means of the grading of streets or the construction of gutters in the said city, did add to the natural flow of water passing over the said streets, and made no suitable provision for the conducting such water away; and if, by reason of such accumulation of water, it escaped from said streets upon the plaintiffs' premises, and damage occurred to the plaintiffs thereby,—plaintiffs are entitled to recover, unless the jury shall find that the plaintiffs contributed by their negligence to such damage."

We are not certain that we fully comprehend the import of this instruction or the meaning intended to be conveyed. If it means that the city in grading its streets would have no right to collect and throw upon them water which would not otherwise have flowed or found its way upon the streets, with-

out constructing gutters or making some suitable provision for conducting such water away so that adjacent property should not be injured by it, and that if the city failed to do this, and damage resulted therefrom, the city would be liable, we see no objection to the instruction. But the instruction seems to be obscure in its meaning, and difficult to be understood even by a lawyer. But as we are not certain that we understand it, we will make no further remarks upon it.

In our view, the most serious objection to the charge is, that it holds the city liable for the destruction of the building if it was occasioned by a rain-fall, however unusual or extraordinary, providing the gutters were insufficient to safely carry off the water. True, this proposition is not distinctly laid down in so many words, but it is the implication of the charge. Now, the evidence shows that the storm which destroyed the building was one of wind, rain and hail of a most unusual and extraordinary character. Bridge and Central streets were covered with surface water. One of the plaintiffs' witnesses says " there was water everywhere;" and that, as the lightning flashed, he "looked up Bridge street, and could see it coming down just like a creek." Another of plaintiffs' witnesses said " the streets were one sheet of water." And there is considerable testimony to the same effect, showing that the rain-fall and storm were most unusual and severe. Now, it seems to us to be carrying the doctrine of liability to a most unreasonable extent, to hold that the city was bound to provide gutters of sufficient capacity to carry off the surface water which might accumulate and run down its streets in such an extraordinary freshet. If the city provides drains and gutters of sufficient size to carry off in safety the ordinary rain-fall, or the ordinary flow of surface water, occasioned by the storms which are liable to occur in this climate and country, it is all the law should require. The remarks of DENIO, C. J., in *Mills v. The City of Brooklyn*, 32 N. Y., 489, 495, are so just and applicable to the present case, that I adopt them as

giving my own views upon this question. "It is not the law," says that learned jurist, "that a municipal corporation is responsible in a private action for not providing sufficient sewerage for every or for any part of the city or village. The duty of draining the streets and avenues of a city or village is one requiring the exercise of deliberation, judgment and discretion. It cannot, in the nature of things, be so executed that in every single moment every square foot of the surface shall be perfectly protected against the consequence of water falling from the clouds upon it. This duty is not, in a technical sense, a judicial one, for it does not concern the administration of justice between citizens; but it is of a judicial nature, for it requires, as I have said, the same qualities of deliberation and judgment. It admits of a choice of means, and the determination of the order of time in which improvements shall be made. It involves, also, a variety of prudential considerations relating to the burdens which may be discreetly imposed at a given time, and the preference which one locality may claim over another. If the owner of property may prosecute the corporation on the ground that sufficient sewerage has not been provided for his premises, all these questions must be determined by a jury; and thus the judgment which the law has committed to the city council, or to an administrative board, will have to be exercised by the judicial tribunal." So it might be said, with reference to the question here, the duty of providing gutters of sufficient capacity and size to carry off the water falling from the clouds upon the streets, is one requiring the exercise of deliberation, judgment and discretion. Persons might well differ as to whether a gutter was ample to carry off all the water which would fall during a violent and excessive rain. If the city did provide gutters which were sufficient to conduct away in safety the rain-fall of ordinary storms — such freshets as usually occur in this climate, — it would seem to be all the law should require. The duty of providing against an extraordinary rain-fall or

unusual freshet, such as does not occur but once in a series of years, which persons of ordinary prudence would not think of guarding against, is a burden which ought not to be imposed upon the city. Besides, there is another consideration which has weight. There was testimony which tended to show that the premises in question were low, and below the established grade. In reference to premises thus situated Judge DILLON, in his work on Municipal Corporations, says: "And even when the work of graduating the streets has been entered upon, there is not ordinarily, if ever, any liability to the adjoining owner arising merely from the *non-action* of the corporation in not providing means for keeping surface waters from property situate below the established grade of the street. There are, indeed, cases which go further, and assert that there is no such liability, where, in making improvements upon streets or elsewhere, *authorized by law*, surface waters are purposely turned from one's own land to that of another — from the street directly upon the adjacent property." Section 799.

The authorities cited in the notes fully bear out the doctrine of the text of the learned writer; but it is not necessary in this case to go to the extent of holding there would be no liability if it appeared that surface water was purposely turned from the street on the plaintiff's property to its injury. In this case the circuit judge, in one part of the charge, told the jury that a city was not required, in grading and improving the streets, to insure absolute safety to property-owners — that this might be impossible, — but was bound to use reasonable care and skill in doing its work; but still the judge refused an instruction asked, that if the destruction of the building was occasioned directly by the storm, either by the wind, or by the rain and hail, or by all combined, the city would not be liable. In view of the testimony to which we have referred, we think the learned judge must have been of the opinion that the city would be liable for the loss, even

though it was occasioned by an extraordinary rain-fall or an unusual freshet, such as a discreet and prudent person would not think of guarding against, and therefore refused the instruction. Indeed, we think the implication of the charge is, that the city would be responsible under such circumstances for not providing sufficient gutters to carry off the rain-fall. This was error.

Without noticing the other questions discussed, we think the judgment must be reversed, and a new trial ordered.

*By the Court.* — So ordered.