See note to this case in 34 N. W. Rep. 731.— REP.

----

HOPKINS, Respondent, vs. THE TOWN OF RUSH RIVER, Appellant.

*October 18 — November 1, 1887.*

*(1, 2) Highways: Swollen stream: Extraordinary freshet: Duties of town: Instructions to jury. (3) Special verdict: Assessment of damages not a general verdict. (4) Appeal to S. C.: Costs for printed case: Reduction of allowance.*

1. The plaintiff, whose horses and carriage were swept away while he was crossing a stream on a highway in the defendant town, was well acquainted with the crossing, the character of the stream, and its liability to rise suddenly. Before reaching the stream he had crossed others which were much swollen by a heavy rain-fall of

Hopkins vs. The Town of Rush River. ·

the night before. He could see the increased width of the stream in question for many rods before reaching it, and even after entering the shallow water at one side of it he could have turned back. *Held*, that instructions to the jury giving prominence to his claim that he was justifiably ignorant of the danger, and stating that he had a right, in the absence of barriers or signals erected by the town, to presume that the crossing was safe, were misleading.

2. Where a highway crossing a stream has been rendered unsafe by a sudden freshet, the liability of the town for an injury caused by such unsafe condition of the crossing depends upon whether the freshet was or was not an *unusual and extraordinary* one; and it was error, in such a case, to submit to the jury for a special verdict a question with instructions based upon the theory that the only exception to the rule requiring towns to keep their highways in a safe condition for travel is the case of *unprecedented* floods which they cannot reasonably expect to occur.

3. A mere assessment of the plaintiff's damages in a special verdict does not amount to a general verdict in his favor.

4. The printed case herein (containing 174 pages) might have been reduced one half, but its unreasonable size was partly due to unnecessary amendments by the respondent to the bill of exceptions. In the taxation of costs $115 was allowed for printing the case. On respondent's motion for a retaxation a deduction of $30 from such allowance is ordered, but without costs of the motion.

APPEAL from the Circuit Court for *St. Croix* County.

This is an action brought to recover damages for injuries alleged to have been received March 27, 1880, by the plaintiff to his person and property, by reason of a defective highway in the defendant town, upon which he was traveling. There was a special verdict by which the plaintiff's damages were assessed at $1,021.65. A motion for a new trial was denied, and judgment for the plaintiff for the above amount and costs was rendered by the court. The case is further stated in the opinion. The defendant appeals from such judgment.

For the appellant there was a brief signed by *L. P. Wetherby* and *John W. Bashford*, attorneys, and *Tenney, Bashford & Tenney*, of counsel, and the cause was argued orally by *Mr. R. M. Bashford*.

For the respondent there was a brief by *R. H. Start* and *A. Taylor*, and oral argument by *Mr. Start*.

The following opinion was filed November 1, 1887:

LYON, J. The highway in question crossed Rush river in the defendant town. Formerly there was a bridge across the river at the point of crossing, but it had been removed some years before the accident and not rebuilt. The highway going west passed down a somewhat precipitous bank a few feet high, on the east side of the river, and from the bed of the river west the ground gradually ascended. The bottom of the river consisted of hard gravel, but something of a rut or hole had been worn therein by passing teams and vehicles. Ordinarily there was but little water running in the stream, and in an ordinary stage of water the crossing could be made without difficulty. The stream drained quite a large extent of country, and in times of heavy rains was subject to rise rapidly.

The plaintiff resided in Baldwin, about three miles from the crossing. He had frequently crossed the river at this point, and was well acquainted with the crossing and the character of the stream. On the day before the accident he crossed there, traveling west, with a team of horses and carriage, accompanied by one Brown. The jury found that the stream was then about eight feet wide, and about one and a half or two feet in depth. On that occasion he went from his residence at Baldwin, in St. Croix county, to River Falls, in Pierce county. During the night and the following morning the rain fell heavily. He and Brown returned the next day by the same route. Before they reached Rush river they crossed other streams which had become much swollen by the rain-fall. When they reached the crossing of Rush river, the volume of water had greatly increased above that of the preceding day. The jury found that it was then about eight rods in width, and from three to four

feet in depth. The plaintiff drove into the water from the west side, in full view of the river. The water on the west side was shallow, and was not running rapidly, the current being next the east shore. Before he reached the current he might have seen and ascertained the condition of the stream, and the jury found that at that point he might have turned around and retraced his steps. He did not do so, neither did he make any inquiry as to whether he could safely cross,— although there were residents in the immediate vicinity who were familiar with the stream. Without stopping he drove into the current, and his team and carriage, with himself and Brown, were swept down the stream by the force of the current. The horses were drowned. The carriage lodged against a post in the stream a little distance below, where it upset and precipitated its occupants into the water. Brown succeeded in getting out, and with considerable difficulty aided in rescuing the plaintiff.

Three fourths of a mile west of the crossing, a safe and convenient highway leading to Baldwin diverged from that upon which the plaintiff was traveling. He knew of this highway.

Upon the foregoing facts, the jury found that the plaintiff was not guilty of any want of ordinary care which contributed proximately to the injuries of which he complains. The jury also found that the highway at the crossing, in view of its situation and liability to overflow, was not in a reasonably safe condition for the passage of teams, and that the accident to the plaintiff occurred by reason of such unsafe condition. Although it may be difficult to understand upon what grounds the jury acquitted the plaintiff of contributory negligence, yet, for the purposes of this appeal, the above findings will be regarded as verities in the case.

Numerous exceptions were taken on behalf of defendant to the charge of the circuit judge to the jury, and his refusals to charge as requested in its behalf; to questions sub-

mitted to the jury, and the refusal of the court to submit other questions proposed in behalf of the defendant; and to certain other proceedings which occurred on the trial. The view we have taken of the case renders it unnecessary to consider but a few of these exceptions. They will be discussed under two heads. No other exceptions are determined.

1. After stating that the plaintiff claimed there was nothing in the appearance there, or from what he knew of the stream, to put him upon inquiry or reasonably to impress upon his mind, or upon the mind of any ordinarily prudent man, any sense of danger, the learned circuit judge proceeded to instruct the jury as follows: " The plaintiff had a right to presume, in the absence of anything appearing to the contrary, in the absence of anything which under ordinary circumstances would show a different state of things, he had a right to presume that the town authorities had kept the road as it should be; and, if they had failed to keep that road in a sufficient condition, he had a right to act upon that presumption, in the absence of anything to show a contrary state of things. He claims that he went along there, and saw a wagon-track that he thinks passed the same day, and that he saw no barrier or danger signals to warn him. It is undoubtedly true that where a main traveled road, along which there is a great deal of travel, gets out of repair and is suffered to remain so for a long time, in an eminently dangerous condition, it is the duty of the town board, if they don't make the proper repairs upon it to make it safe, to erect some barriers and to put up some signal warning parties of the dangerous condition of that place. I say that is the rule where it is known to be dangerous,— where the town board knows it to be dangerous and allows it to remain so for a considerable length of time. The absence of these barriers would not, of course, justify the plaintiff in rushing into danger if he could see it, but he could have the right to presume something, in the ab-

sence of the facts and circumstances to put him upon his guard; and he would have a right to presume, in the absence of these barriers, and from the fact that it was a main traveled road, that the road was safe. The plaintiff also claimed that the current of the stream was some six or eight rods wide, and as he went in from the west side of the stream he did not see, and could not see, the current. The current runs up to the east side, and therefore it is not plainly visible from the fact that he went in on the west side where the water was still." Specific exceptions covering all the portions of the charge above quoted were duly taken.

While the above instructions may contain a correct exposition of the law in a case to which they are applicable, we are clearly of the opinion that they are inapplicable to the present case, and might have misled, and probably did mislead, the jury. In the first place we think undue prominence is given to the claim of the plaintiff that he was justifiably ignorant of the danger to which he was exposed. As already stated, he was well acquainted with the crossing, the character of the stream, and its liability to rise suddenly when there was a heavy rain-fall. The proof shows conclusively that he could see the width of the stream for many rods before he reached it, and, as already stated, the jury found he could have retreated after he ascertained its condition. The current of the stream on the east bank was quite narrow, the depth of the water only three or four feet, and yet it was running with a force sufficient to sweep a span of horses and carriage down the stream. Some adequate idea of the violence of such a torrent must have been suggested to any one who saw it, and it seems hardly credible that there was nothing in the appearance of the stream to impress a reasonably prudent mind with a sense that it would be dangerous to attempt to drive through it. There is no room, therefore, in this case, for the presumption of safety which grows out of the duty of the town to

make the highway safe, or, if unsafe, to erect barriers or signals of danger; yet the jury might have given, and probably did give, the plaintiff the benefit of the presumption of safety arising from such duty of the town to make the highway safe or to erect signals of danger. For the reasons above suggested, it must be held that, as applied to the facts of this case, the instructions are misleading and should not have been given. It requires no argument to demonstrate that the defendant may have been prejudiced by the instructions. Hence the error in giving them is fatal to the judgment.

2. There was much testimony tending to show that the freshet or flood in question was a very unusual and extraordinary one. Counsel for the defendant requested the court to submit the following question to the jury: "Was the storm at this time an exceptionally heavy storm all over this section of the country, which made the water very high in this locality?" The court refused to submit this question, but in its stead submitted the following: "Was the freshet in question exceptionally high,— so much so that it was not reasonably to be anticipated by the town authorities?"

We think the question proposed on behalf of the defendant, or its equivalent, should have been submitted to the jury, and that the question submitted is not such equivalent. In *Allen v. Chippewa Falls*, 52 Wis. 430, we had the question of the duty of the city to construct gutters along its streets to carry off the water which might gather in them. It was held that the city was only bound to provide gutters sufficient to carry off in safety the ordinary rain-falls, or ordinary flow of surface water occasioned by the storms which are usually liable to occur in this climate and country; and if the gutters overflowed and injured the property of adjoining owners by reason of an unusual or extraordinary rain-fall and flood, the city is not liable. The same prin-

ciple applies here.   If in this case the rise in the stream,
which was the cause of the injury complained of, was an
unusual or extraordinary rise, the town is not liable.   The
question proposed on behalf of the defendant was drawn in
accordance with this view of the law.   Not so, however,
was the question submitted to the jury, especially as it was
interpreted by the trial judge.   The jury were instructed
that towns " are not obliged to guard against unprecedented
floods that they cannot reasonably expect to occur.   There
is occasionally in every country a very high, exceptionally
unprecedented flood, without precedent, so high that there
is no anticipation of such a flood.   These are such excep-
tional floods that towns are not required to guard against,
but they must keep the road safe in any ordinary flood
which experience has shown to be reasonably anticipated —
reasonably liable to occur."   This was given as the only
exception to the rule of law which requires a town to keep
its highways in a safe and convenient condition for travel.
The court said, further:   " The question is whether this
flood was materially and substantially higher and more
dangerous than any ordinary flood of that town.   That is
the meaning of that question,— so much so that it could not
be reasonably anticipated by the town authorities."

The infirmity in the question submitted is that it does
not present to the consideration of the jury the true test of
the liability or want of liability of the town, which is
whether the freshet was or was not an unusual and ex-
traordinary one.   The question submitted was whether the
freshet in question was one reasonably to be anticipated by
the town authorities.   In this latitude and climate, unusual
and extraordinary rain-falls and freshets may reasonably
be anticipated by any one at long intervals and uncertain
times.   Hence the jury may have found that this freshet
in question was an unusual or extraordinary one, and yet
that it might reasonably be anticipated by the town author-

ities to occur at some time or other, and this the more readily after they were told that to excuse the town from liability it must have been unprecedented. In our opinion, the failure to submit the proper question in this behalf is a material error.

The foregoing defect in the special verdict is not cured by a general verdict, for the jury did not return a general verdict, although counsel for defendant seem to concede that they did so. They merely assessed the plaintiff's damages in answer to the question, "How much damage has the plaintiff sustained by reason of the accident?" But there is no finding for the plaintiff.

For the errors above indicated the judgment of the circuit court is reversed, and the cause will be remanded for a new trial.

*By the Court.*— It is so ordered.


In the taxation of costs, the appellant was allowed $115 for the printing of the case. The respondent moved for a retaxation. The following opinion was filed January 10, 1888:


LYON, J. The plaintiff moves for a retaxation of costs for the alleged reason that the sum allowed for printing the abstract of the case is excessive. The abstract contains 174 pages, and yet it is the common case of an action against a town to recover damages alleged to have been caused by a defective highway. There is nothing intricate about the case, either in its facts or in the law governing it. The abstract would be greatly improved by condensing it to one half its present limits, and it should not have exceeded that. We would reduce the sum allowed for it in that proportion but for the fact that the plaintiff proposed 198 amendments to the bill of exceptions, most of which were allowed. These amendments swelled the record, and in

many, if not in most, instances unnecessarily. Much of this surplus matter has found its way into the printed case, and the fault is as much the plaintiff's as the defendant's.

Under these circumstances we adopt a medium line. We grant the motion without costs, and direct the clerk to deduct $30 from the allowance for printing abstract of case.

· *By the Court.*— Ordered accordingly.