Geuder, Paeschke & Frey Co. v. Milwaukee, 147 Wis. 491.

GEUDER, PAESCHKE & FREY COMPANY, Respondent, vs. CITY OF MILWAUKEE, Appellant.

*November 16—December 5, 1911.*

(1-3) *Evidence: Weight and sufficiency.* (4) *Injury to property: Measure of damages.* (5-10) *Municipal corporations: Insufficiency of sewer: Liability for damage: Adoption of defective plans: Mistakes: Negligent execution: Defects subsequently appearing: Want of repair: Notice.* (11-14) *Proximate cause: Causes operating together: Action.*

1. The uncontroverted, reasonable, positive, consistent evidence of one witness, who personally knows whereof he testifies, even though a party, is controlling.

2. The rule stated in the foregoing is not for a case where inherent infirmity impairs the credibility of the evidence, or evidence is of opinion character in the field of common knowledge, or the special field in which the judge, presumably, has the knowledge of an expert.

3. Evidence given by a witness, dependable upon unverified reports made by others and not entered or preserved in the regular course of business, but in efforts to make out a claim to be presented to another for payment, is not, by itself, sufficient to sustain such claim, if admissible at all.

4. The measure of recoverable loss in case of wrongful injury by one person of property of another, is the diminished market value at the time of the occurrence with interest to the date of recovery, and the special damages, if any.

5. The limit of municipal responsibility, in any event, to dispose of surface water and sewage, is to provide for such volume as ordinarily accumulates.

6. In case of construction by a municipality of a sewer or drain to take care of surface water, or that and sewage, and private property, the safety of which is dependable thereon, is injured by an unusual rainfall,—though yet one not so uncommon but that such might reasonably be expected some time, the damages are not recoverable.

7. If a municipality, acting reasonably, duly adopts a plan of sewage, specifying size of conduits and accessories and character of construction, and executes the same, it is immune for consequences inherent in the plan itself,. including the proposed method of construction.

8. Mistakes in respect to matters included within the scope of the rule stated in No. 7, are errors of judgment, by a body clothed with discretionary authority, of the same status as judicial or *quasi*-judicial acts, as regards liability for negligence.

9. If upon a sewage plan being duly adopted it is negligently executed in respect to something not inherent in the plan or method of construction, the municipality is chargeable with knowledge thereof and responsible for consequences within limitations stated in the foregoing.

10. If a plan of sewage is legitimately adopted and executed and thereafter proves defective, either for want of repair or infirmity in the plan or method of construction, and the difficulty is brought, actually or constructively, to the knowledge of the municipal officers charged with the duty of looking after such matters, and the insufficiency is not remedied within a reasonable time, the neglect constitutes actionable negligence in case of injury to private property being proximately caused thereby.

11. In case of damage to person or property by several circumstances each of which is a proximate cause thereof, some of which are actionable and some not, the mere fact that each was such a cause does not demonstrate that any one was the proximate cause, and so actionable under the circumstances.

12. If two causes operate together in producing an injury, one of which is of an actionable nature and the other not, the former is not actionable under the particular circumstances, unless had it not been operative the injury would not have occurred.

13. If two causes operate together in producing an injury, one of which is of an actionable nature and the other not, and the injury would not have occurred to as great an extent had the former not been operative but would have occurred to some extent, the loss is not legally chargeable to the former except in so far as the injury was increased thereby.

14. Where two causes are set in motion, one of which, in case of damage to a person because of it, is actionable and the other not, and the two lose their identity by merger and, so united, reach one in his property or person and cause him damage under such circumstances that had the cause of actionable nature not existed the other would have reached the point of injury and caused the damage just the same, the person damnified is remediless.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Reversed.*

Action to recover for damages alleged to have been caused by a negligently designed, constructed, or maintained sewer.

This is the claim of plaintiff: In June, 1893, it owned a warehouse and store building, corner of Fifteenth street and St. Paul avenue, in the city of *Milwaukee,* and had stored in the basement a large stock of merchandise, composed, in part, of sheet tin. The city sewer system in front of the building was not designed to take care of surface water and sewage in the manner it was used at such time. The sewer was faultily designed and the system also, as used at such time, whereby it became overloaded and burst, resulting in a large quantity of the contents thereof going into plaintiff's basement and damaging its property to the extent of $4,916.52. All conditions precedent to maintenance of the action were pleaded.

By the answer the allegations of the complaint as to actionable fault, also as to the amount of damages to plaintiff's property, were put in issue and it was claimed that the escape of water into the basement was caused by an extraordinary rainfall which defendant was not legally bound to provide for.

Evidence was produced to establish plaintiff's cause of action, and, as the trial court supposed, to establish the amount of damages with such certainty as not to leave any jury question in respect thereto. There was also evidence tending to prove defendant's claim that the damage was caused by an extraordinary rainfall,—one which might probably occur sometimes but at long intervals. The court submitted the case to the jury, resulting in these findings:

1. Plaintiff's property was damaged in the manner and at the time claimed.

2. The rainfall, immediately preceding the bursting of the sewer, was not of such extraordinary character that such an occurrence in that locality was not reasonably to be apprehended.

3. The capacity of the sewer was insufficient to provide for the sewage and surface water reasonably to have been expected.

4. The officers of defendant ought reasonably to have apprehended that fact.

5. The insufficient size of the sewer was a proximate cause of the plaintiff's damage.

6. The size and construction of the sewer was such that failure thereof to do the service it was subjected to was reasonably to be expected.

7. The officers of defendant ought reasonably to have known of the insufficiency of the sewer in time to have prevented the damage in question.

8. The insufficient construction of the sewer was a proximate cause of the injury.

9. The materials of which the sewer was constructed had become partially decayed.

10. The officers of defendant ought reasonably to have known that fact in time to have prevented the injury.

11. The decayed condition was a proximate cause of the damage.

12. Plaintiff was not guilty of any proximately contributing fault.

13. The basement was not dangerously flooded before the escape of water and sewage from the sewer.

14. Plaintiff's property was damaged $2,500,—and with interest from the time of the occurrence, $4,879.

The subject of whether water from the surface of the street reached the basement before that which escaped from the sewer, or united with the water which escaped from the sewer before the flow into the basement so that the damage would have been caused regardless of the bursting of the sewer,— the court refused to submit to the jury.

There was a second cause of action for damages alleged to have happened because of the condition of the sewer, a short time after the first flood, all issues in respect to which were found in defendant's favor.

The court denied all motions and overruled all objections and exceptions adverse to the verdict, granted plaintiff's motion to increase the found damages to $4,392.14, exclusive of interest, and with interest, $7,665.60, and rendered judgment accordingly.

For the appellant there was a brief by *Daniel W. Hoan,* city attorney, and *Clifton Williams,* special assistant city attorney, and oral argument by *Mr. Williams.*

For the respondent there was a brief by *Austin, Fehr & Gehrz,* and oral argument by *G. G. Gehrz.*

MARSHALL, J.   The judgment must be reversed for several reasons.

The trial court erred in changing the finding of the jury on the subject of damages,—nearly doubling the same.   That is so clear as to be unexplainable, seemingly, except upon the theory that, it was thought the evidence of one interested witness on the subject of damages, not contradicted from the mouth of any other, is, necessarily, to be taken as true.   Not so by any means.   True, the uncontradicted, positive, consistent evidence of one witness, who personally knows whereof he testifies, even though a party, is controlling, if not affected by any inherent weakness materially impairing its credibility, and not purely opinion evidence in the field of common knowledge, or the special field in which the judge, presumably, has the special knowledge of an expert.   That leaves a broad field where the court and jury are not bound by the evidence of a party, even though entirely uncontradicted by any other witness.

The mere words in which the evidence of a witness may be given, is one thing, the probative effect is another.   In the former it may be very positive, direct, and consistent, yet in the latter be of very little weight, or of no weight whatever. It may be so very unreasonable, or contrary to matters of common knowledge, as to be self-destructive, or so based on matter of hearsay as to greatly impair its credibility, if not leave the matter involved not established to the reasonable certainty required to warrant a finding in favor of the party on whom the burden of proof rests.   These suggestions are so elementary that the mere statement thereof is sufficient for this case.

The application of what has been said will be apparent from the following: The only evidence on the subject of damages was given by the one mainly interested in securing a judgment, and as large a one as practicable. He, doubtless, testified to the truth, so far as he knew it. The infirmity was, in that he had very little, and no precise, personal knowledge of the extent of the damage. Many years elapsed between the occurrence complained of and the trial. The witness depended, in the main, upon an eighteen-year-old record made by himself from written data furnished him by many persons who were not witnesses and whose work was entirely unverified. The original writings, even, were not produced. The witness had, practically, no personal knowledge of the subject of his testimony, except that there was a large amount of tin stock in the basement; that the basement was flooded to some extent, and that the necessary effect of such an occurrence on such property was to damage it. What the precise effect was in the given case, the amount of property in the basement, the extent to which it was flooded with water, and all the particulars of the damages, were outside his personal knowledge. All those matters were given to him at his desk by verbal explanations and written data from many persons. From that he made up the record presented to the court. He knew his statement to be correct according to the second-hand information which came to his desk, gathered by those who were working in his interest, and then compiled with his estimates and preserved on file, not in the regular course of business, but for the very purpose of making up a claim against defendant. Whether the information which came to him was true, he, manifestly, did not know.

The data furnished the witness as aforesaid, were not, as suggested, in the nature of entries, or reports for entry, in the regular course of business. The happenings were not before the particular use made of them was contemplated so as to make the record, or evidence depending thereon, admissible in evidence under an exception to the rule as to hearsay evi-

dence illustrated in *F. Dohmen Co. v. Niagara F. Ins. Co.* 96
Wis. 38, 71 N. W. 69.   On the contrary, all the writings, as
before indicated, were made in the process of laying a basis
for efficiently making a claim against the city.   Instead of
the situation being such as to create a strong probability of
the work being correct, it was one well calculated to produce
unsatisfactory results.   None of the reasons characterized
the matter rendering entries of transactions in the regular
course of business in which many persons are concerned, evi-
dence for what they are worth, but the one circumstance that
there were many actors in the matter rendering it difficult, if
not impossible, to produce them in court to verify their work
several years after the transactions.   There was not even the
merit of an attempt to produce those who gathered the infor-
mation the witness used in making his statement. · Moreover,·
no effort was made to have the work done so as to support the
correctness of it by verification of those who did it.   Even
the written data used by the witness were destroyed.   Men,
in number and of a character, were used in gathering the in-
formation, in utter disregard of the necessities of the future
as regards judicially establishing a claim.   The dilemma
which left the case to rest, largely, on the unverified state-
ments, was created by respondent at the very time when great
care should have been exercised to gather and preserve evi-
dence, competent in a court of justice to establish the facts.

When it came to giving a money measure of the diminished
value of the property, the witness gave opinion evidence only,
and not even that, as we have seen, on personal knowledge of
the damage, or facts in that regard verified upon the trial, or
at all.   Moreover, not even opinion evidence was given of the
value constituting the legal basis for a. recovery.   He failed
to testify at all to the diminution of the market value of the
stock caused by the flood.   His evidence related to what the
property cost and what it was worth to respondent after the
flood.

There is this further infirmity in the evidence as regards

furnishing any certain basis for an assessment of damages: There was a second flood and a second infliction of damages, as was claimed, and statement of loss made up including both occurrences. The jury found, there was no right of recovery shown for the second occurrence, and that was not disturbed. An attempt was made to separate the claim so it would be definitely seen what amount was chargeable to the first flood and what to the second. In the end, the precise amount charged by the witness to each flood was left quite uncertain. If removed from the field of conjecture, it was not from the field calling for jury interference, if, indeed, it had sufficient probative power to locate it there at all.

On the whole, we are not prepared to say, there was sufficient competent evidence of the damages to warrant the jury in finding in respect thereto to a reasonable certainty, or even that the evidence depended on to prove the claim was competent at all. It would not be well to venture upon another trial without being prepared to furnish some substantial verification of the data upon which the witness relied in making up the claim for damages, not only as regards the amount and kinds of property damaged, but the precise condition thereof after the flood. In attempting to make a finding as to damages, under the circumstances, that the jury placed the amount much less than the total claimed, is most natural. It was competent for them to do so,—conceding for the point that the evidence of damages was competent to establish some amount with reasonable certainty,—upon the theory that no more than the $2,500 found was established, satisfactorily. At the best for respondent, conceding as indicated, the court grievously erred in changing that finding by greatly increasing the amount.

Another serious error was committed by submitting questions to the jury, especially in connection with the charge, as to whether the rainfall was so excessive as not to be reasonably anticipated by men using ordinary care,—the thought being

that answers thereto would settle the question as to municipal
liability.    That idea pervades the whole verdict.    The error,
in prejudicial character, was intensified by refusal of the
court to submit to the jury, whether the rainfall was extra-
ordinarily heavy.    Evidently the learned trial court enter-
tained the idea that, in maintaining a system for carrying off
surface water, or such and sewage, the city should provide
for any accumulation reasonably to be expected.    That idea
was, unmistakably, embodied in the verdict as explained by
the instructions.    That it was erroneous seems plain from the
following:

The leading case in this state on the subject under discus-
sion is *Allen v. Chippewa Falls,* 52 Wis. 430, 9 N. W. 284.
There rainfalls are plainly differentiated or divided into or-
dinary, extraordinary, and unprecedented.    The latter class
is not expressly spoken of, but is inferentially.    The plain
logic of the case is that there are ordinary rain storms,—
such as frequently and ordinarily occur,—extraordinary rain
storms,—such as occur sometimes, but are not unprecedented,
hence may be reasonably anticipated will occur once in a
while,—and the unprecedented,—such as have never, so far
as known, definitely, occurred before, and so are not reason-
ably to be expected even at long intervals, though not impos-
sible.

It is only the first class mentioned that the municipality, in
maintaining its sewer system, must use ordinary care to pro-
vide for.    What the court meant in *Allen v. Chippewa Falls,*
*supra,* by "extraordinary" is plain from the fact that the
word was not used as synonymous with "unprecedented" but
with unusual,—that which is rare or uncommon; happens
sometimes but not so often as to be regarded a common oc-
currence.

The conclusion stated will be appreciated by a study of the
opinion of DENIO, C. J., in *Mills v. Brooklyn,* 32 N. Y. 489,

495, which was followed in the *Allen Case,* this language being quoted:

"If the city provides drains and gutters of sufficient size to carry off in safety the ordinary rainfall, or the ordinary flow of surface water, occasioned by the storms which are liable to occur in this climate and country, it is all the law should require."

Note the words "storms which are liable to occur." The court in the *Allen Case* correctly interpreted the thought of the New York court as not to be of all storms which are liable to occur, but storms which usually occur. That is manifest by the phrasing of the matter by this court thus:

"If the city did provide gutters which were sufficient to conduct away in safety the rainfall of ordinary storms,—such freshets as usually occur in this climate,—it would seem to be all the law should require."

What has been said is confirmed by *Hopkins v. Rush River,* 70 Wis. 10, 34 N. W. 909, 35 N. W. 939, where the court declared that in the *Allen Case* it was held that the limit of municipal duty was to provide for such storms as are "usually liable to occur." Note the significance of the words "usually liable." That plainly excluded storms which are liable to occur and so are within reasonable anticipation that they may or will occur, but only at long intervals.

In the *Hopkins Case,* as counsel for appellant contend, the judgment was reversed because the trial court, the same as here, submitted the case as if all storms within reasonable anticipation are to be provided for. The question submitted was, "Whether the freshet in question was one reasonably to be anticipated?" This court commenting on that said:

"In this latitude and climate, unusual and extraordinary rainfalls and freshets may reasonably be anticipated by any one at long intervals and uncertain times. Hence the jury may have found that the freshet in question was an unusual or extraordinary one, and yet that it might reasonably be anticipated by the town authorities to occur some time."

Because it is for the latter duty only a municipality in maintaining a sewer system is to provide. The judgment was reversed.

The idea expressed in the *Hopkins Case* was in mind in *Schroeder v. Baraboo*, 93 Wis. 95, 100, 67 N. W. 27. There *Allen v. Chippewa Falls* was referred to as correctly holding that "negligence on the part of the municipality cannot be predicated on mere failure to construct gutters or sewers of a sufficient capacity to carry off surface water in case of an extraordinary storm, such that a person of ordinary prudence would not ordinarily anticipate and provide against." The word "anticipate" was added to what was said in the *Allen Case*. But it is evident there was no thought of adding a new element. "Anticipate" was used in connection with "ordinary" with the idea that what ordinarily,—commonly,—occurs, must necessarily be within ordinary anticipation. Obviously there is a wide difference between the things ordinarily anticipated because of their common occurrence, and things within reasonable anticipation, which extends to everything which may reasonably happen,—things which are within the realms of possibility, but extraordinary in that they seldom occur.

There was much evidence tending to prove that the basement was flooded before the sewer broke and that, had the break not occurred, the damage would have happened just the same. The evidence strongly tends to show that the breaking of the sewer, at the worst, merely added to a flood already existing; the water from the sewer uniting with an existing flow in the street in which that from the sewer lost its identity. So it seems quite clear that the court should have submitted questions on both subjects, as requested. If the damages, in the whole, would have occurred regardless of the breaking of the sewer, then such breaking was not the proximate cause of the injury to respondent's property. If the water from the sewer united with, and lost its identity in,

an independent flow of water which as an entirety subsequently reached respondent's basement, then the breaking of the sewer was not the proximate cause of the respondent's damage except in so far as the damage would not have occurred had the water from the same not been added to that in the street.   The rules governing these phases of the case are fully discussed in *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624, 74 N. W. 561.   All such should have been submitted to the jury, if the case had to be submitted at all.

The point is made that the evidence conclusively shows that the rainfall and flood were extraordinary and, therefore, the court should have taken the case from the jury in appellant's favor.   That matter is by no means free from difficulty.

The evidence very strongly tends to prove that the rainfall was out of the ordinary.   It is not unlikely that the trial court would have so held, as matter of law, had the rule been understood to be as we have indicated.   The court might well have thought the rainfall was extraordinary,—unusual and yet not beyond reasonable anticipation,—something between an unusual occurrence and the unprecedented.   Had it been supposed that such medium line was fatal to respondent, the result, perhaps, would have been different.   There was undisputed evidence that before the sewer broke basements in the vicinity of respondent's were flooded, water was over sidewalks in some places to a considerable depth, and in one instance the sidewalk actually floated off.   The evidence on the part of appellant made out a very strong case of an extraordinary rainfall and freshet,—such as occurs, if at all, only at long and very uncertain intervals,—indeed one, the like of which, no evidence was produced.   Opposed to that there was only the weather bureau record produced by the person in charge, and his evidence in connection therewith respecting rain precipitation.   At one point he was inclined to call the rainfall in question excessive, but not extraordinary, and at another excessive though not to such extent but that it was

within reasonable expectation. He said a precipitation of one inch per hour would be excessive. The person in charge of the forecasting department 'of the local station of the weather bureau, showed by his record that the precipitation on the day in question for the hour about the time the sewer broke was considerably more than one inch, had not been exceeded but some three times in about seventeen years, and had not really been exceeded at all under the same circumstances. He called it extraordinary. Neither of these witnesses pretended to know anything about the particular freshet, except as indicated by their records.

On the state of the case indicated the majority of the justices are constrained to hold that there may be, in some permissible view of the evidence, room for holding that the rainfall was not extraordinary. As we have indicated, neither trial judge nor jury passed on the matter from a proper point of view as to the law. Therefore, it is thought best to leave it so, upon another trial, such court can exercise original judgment in respect thereto.

In view of the foregoing, a few general observations respecting other matters which seem within the exceptions, will suffice to guard against a recurrence of the errors found in the record, and others that might be cognate thereto.

The issue of whether the sewer was sufficient in size for the service put upon it was submitted, found in the negative, and that such defect was a proximate cause of the injury. In this, the court seems to have overlooked the settled doctrine that, if a municipality, acting reasonably, adopts a plan of sewage, including the size, form, and character generally of the conduits, and executes the same, it is immune for consequences inherent in the plan itself, including the proposed method of construction. *Schroeder v. Baraboo,* 93 Wis. 95, 67 N. W. 27; *Hart v. Neillsville,* 125 Wis. 546, 104 N. W. 699. Mistakes of the character of those mentioned are referable to mere errors of judgment made by a body clothed by

law with discretionary authority, and have the same status as regards liability for negligence as mistakes of any person or body exercising *quasi*-judicial authority.

True, if upon executing a plan of sewage and the system being put in operation it proves defective, endangering private rights, the duty arises to exercise ordinary care to remedy the matter, and failure to perform such duty may be actionable. *Hart v. Neillsville, supra; Hart v. Neillsville,* 141 Wis. 3, 123 N. W. 125. Whether the municipality had such knowledge or not in this case, was submitted to the jury and found in respondent's favor; but, inasmuch as the record is barren of evidence that the sewer at any time before the instance in question had proven insufficient, it seems likely that the jury might have so answered upon the theory that the plan itself was insufficient, and the municipal officers should have known it. Of course the rule which renders the municipality immune for mistakes in the plan will render it immune from any charge of constructive knowledge of insufficiency from mere implied knowledge of the plan. Knowledge, actual or constructive, in such a case, must come from performance of the system or something other than knowledge of the plan itself. The municipality does not need to search for defects till something occurs independently of the plan to suggest the existence thereof. The submission of the case in this respect was not free from criticism. The appellant having in the exercise of its discretionary authority adopted the plan, it had a right to presume that such plan was sufficient till, by performance, the contrary was brought home to it, actually or constructively. It did not have to suspect the existence of defects and search for them.

This must be remembered: (1) A municipality is not responsible for mistakes in a duly adopted plan of sewage. (2) A municipality is responsible for a defective original construction of a system of sewage, as said in the authorities already cited, but that means negligent execution of the plan,

not defective original construction inhering in the plan itself. Proper construction according to the adopted plan can never be a defective original construction, within the rule mentioned.    (3) If a duly adopted and executed plan of sewage does not prove defective in operation while in a proper state of repair, but becomes out of repair to the knowledge, actual or constructive, of the municipality, the duty devolves upon it to remedy the matter, and it is liable for failure to exercise ordinary care in respect thereto.

One thing more.    We observe that the form of the questions on the subject of proximate cause, was such that, as to three distinct matters, the jury found that each *was a proximate cause of the injury*.    There was no finding that any one, or all, was the proximate cause.    Since one of the questions might well have been interpreted so the answer would not render appellant liable, and there were matters, particularly the great amount of water which gathered in the street independently of the sewer, indicating that there were other causes and may be some one of them was the proximate cause of the injury, it is difficult to see how the verdict could, in any event, support a judgment in respondent's favor.

There may be more than one proximate cause of a personal injury, all concurring to produce it.    But neither can, by itself, be said to be the efficient or proximate cause, unless, had the others not operated, it would have produced the injury. So in case of there being two causes, one which is of an actionable nature, and the other not, it is not sufficient to find that the former was a proximate cause, because it may or may not have been an efficient cause; for that, it must have been an element added to the other producing the result, which, without it, would not have occurred.    *Cook v. M., St. P. & S. S. M. R. Co.* 98 Wis. 624, 638, 74 N. W. 561.

*By the Court.*—The judgment is reversed as to the first flood complained of, and action remanded for a new trial as to such first flood.