CHRISTENSEN, Appellant, vs. CITY OF STURGEON BAY, Respondent.

*January 13—February 7, 1928.*

*Bridges: Sufficiency of construction: Destruction by wind of extraordinary velocity.*

Plaintiff brought an action to recover for injuries sustained when he was swept off a bridge when a high wind loosened and carried away a sidewalk extending along one of the approaches, and the jury found that the sidewalk as constructed was insufficient to withstand ordinary wind storms of common occurrence, but that the wind that wrecked it was of extraordinary velocity. *Held,* on the uncontradicted testimony of a competent engineer as to the strength of a wind required to lift the structure, that such wind velocity would be in excess of what the evidence disclosed was common in the vicinity in the past, and that the trial court was justified in changing the answer of the jury as to the insufficiency of the structure in ordinary winds.

APPEAL from a judgment of the circuit court for Door county: HENRY GRAASS, Circuit Judge. *Affirmed.*

This action, commenced November 28, 1925, was to recover for plaintiff's injuries on July 11, 1925, in being swept from defendant's bridge by a portion of its sidewalk structure.

On the expiration of the charter in 1911 for a toll bridge built in 1886 across Sturgeon Bay, an arm of Green Bay, and connecting the east and west portions of defendant city, the bridge was taken over by the defendant. The west end or approach thereof of some 1,300 feet was rebuilt in 1912 with a new foot passage or sidewalk of four feet in width. In 1913 the east approach, separated from the other by 196 feet of drawbridge, was also repaired in its length of 280 feet and a five-foot-wide sidewalk placed on its north side.

. At 4 o'clock p. m. on July 11, 1925, during a violent wind storm, 160 feet of such east end sidewalk was lifted up from the timbers on which it rested, and 135 feet thereof

torn from the rest of the structure and carried, intact, across the bridge and dropped into the waters below.   Plaintiff was caught by such portion and swept with it into the river, sustaining damages assessed by the jury at $6,500.

On the trial in May, 1926, the special verdict was answered by the jury, so far as material here, as follows:

"(2) Was the sidewalk of the bridge as constructed insufficient to withstand such ordinary wind storms as were of common occurrence and frequently experienced before July 11, 1925, in *Sturgeon Bay* and vicinity, and thereby made the sidewalk not reasonably safe for public travel? *A.* Yes."

"(3) . . . Was such insufficiency of construction a proximate cause of plaintiff's injuries? *A.* Yes."

"(7) Was the plan of construction of this bridge sidewalk a duly approved and customary plan? *A.* Yes."

"(8) . . . Was such sidewalk built in accordance with such plan? *A.* No."

"(9) Was the wind that wrecked the sidewalk on the bridge an unusual and a rare uncommon wind of extraordinary velocity for *Sturgeon Bay* and vicinity? *A.* Yes."

"(10) . . . Was such wind a proximate cause of plaintiff's injuries? *A.* Yes."

Upon motions after verdict the trial court granted defendant's motion to change the answer to the second question from Yes to No, and to strike out the answer to the third question *supra*, and thereupon directed judgment in favor of defendant.

From the judgment of April 8, 1927, plaintiff appeals.

For the appellant there was a brief by *Martin, Martin & Clifford* of Green Bay, and oral argument by *G. F. Clifford*.

For the respondent there was a brief by *Minahan & Duquaine* and *H. M. Ferguson*, all of Green Bay, and oral argument by *E. M. Duquaine*.

Eschweiler, J.   This bridge was used to carry railroad tracks and traffic over the east approach and the drawbridge. A general plan had been adopted and followed for the con-

struction of the four-foot-wide sidewalk on the west approach in 1912, being the plan referred to in the special verdict *supra*. This general plan was followed to a large extent in building the east sidewalk here in question, the only material difference being mentioned below. For this east sidewalk the ends of long railroad ties used as beams were inserted between the ties of the railroad track and projected to the outer edge of this sidewalk. They were supported upon beams or blocks resting on the substructure of the bridge, and upon them rested two 2 x 10 longitudinal stringers, one at the outer edge and one at the center, and at the inner edge were blocks 3 x 12, three feet apart, upon which a 3 x 4 stringer rested. Across such stringers and raised above the level of the rest of the bridge flooring the sidewalk flooring was laid. An outside railing was also a part. At the west end of the east sidewalk was built a shelter house about twelve feet long, four feet wide, and six feet high, and open on the sidewalk front.

The only material differences between the construction of the west and the east sidewalk, other than that of their width, was, that owing to the sagging or sinking of some portions of the substructure at the east end it was necessary, in order to raise the sidewalk to a proper level, to use small strips of wood called "shims" inserted between the stringers and the beams, and by reason whereof the spikes used in toe-nailing the stringers to the beams were kept from penetrating, in some instances, at all, and in others not to the depth that they otherwise would have done. Repairs were necessarily made in 1916 or 1918 at the shelter-house end of the sidewalk because of damage caused by a steamer running against it, and in 1923 because of some decayed timbers being found, and at these times additional shims were used.

At the time of the storm in question, plaintiff, seeing its approach, was hastening from the shelter house towards the east shore when 135 lineal feet of the top structure of the sidewalk in its entire width of five feet was lifted up, raising

at the east end first, the stringers becoming separated from the beams on which they were supported, and the stringers, floor, and shelter house, making a weight of about three and one-half tons, were carried, as one entire part, and swept across the remaining portion of the bridge, clearing the outside edge, and then into the waters below, carrying the plaintiff and another man with it.

If the trial court was right in holding, as a matter of law, upon the evidence, that the finding of the jury to the effect that the bridge was not reasonably safe for public travel because, as constructed, it was insufficient to withstand the ordinary wind storms of common occurrence in *Sturgeon Bay* and vicinity, cannot stand, then it necessarily follows that the plaintiff had, in no event, any cause of action against defendant, for, if the accident was the result of an extraordinary or unprecedented storm, then it comes within the rule recognized by this court of municipality nonliability as expressed in such cases as *Andrus v. Ashland,* 169 Wis. 362, 363, 172 N. W. 721; *Geuder, Paeschke & Frey Co. v. Milwaukee,* 147 Wis. 491, 499, 133 N. W. 835, and plaintiff does not here contend to the contrary. If, however, that answer should stand, then, as plaintiff contends, the insufficient construction making it not reasonably safe against ordinary winds, created liability even though the immediate occasion of its being lifted and moved was an extraordinary wind under the ruling in *O'Connor v. C., M. & St. P. R. Co.* 163 Wis. 653, 657, 158 N. W. 343; affirmed, 248 U. S. 536, 39 Sup. Ct. 21, where it was held that a large tree allowed to remain in a dangerously insecure condition near a right of way and, as found by the jury, liable to be displaced and fall upon the tracks in an ordinary gale, fixed liability although at the particular time of its fall there was blowing an extraordinary wind. This proposition, however, we do not reach or determine on this appeal.

Assuming for the purposes of the present appeal that the situation disclosed as to the nature of this accident brings

it within the class of situations wherein liability may be predicated against a municipality under the duty imposed on such a city in the maintenance of its highways as found in sec. 81.15, Stats., a question, however, not here raised by pleadings or argument, nor necessary for determination now, still we are of the opinion that upon the evidence the trial court was justified in disposing of this case in defendant's favor as he did.

Much stress is laid by plaintiffs upon what is claimed to be the peculiar nature and force of wind storms during the summer months in the vicinity of *Sturgeon Bay,* and called by plaintiff's two sailor witnesses, the only witnesses who so specialized them, "Green Bay squalls." These were described as occurring four or five times each season; to have their extreme velocity for periods not to exceed five minutes; and to be the result of the peculiar configuration of the hilly shores of Green Bay and the differences of temperature in the air coming down Green Bay from Lake Michigan and that coming from the land.

If, however, there be such gusts of wind peculiar to that vicinity, yet the portion of the sidewalk that was lifted up on this occasion had been maintained there in substantially the same way since 1913, and no testimony was produced that in any of the preceding summer seasons wherein such peculiar squalls were said to have occurred there had been any prior loosening of any portion of this sidewalk or any indication of its being loosened or weakened by reason of such squalls so as to place the burden of knowledge as to such peculiar conditions and dangerous possibilities therein contained upon the defendant, or to now support plaintiff's theory as to his right to recover.

It was frankly conceded by defendant's witness who had charge of this work that in constructing this sidewalk the toe-nailing of the stringers to the beams was done with the view of keeping such stringers upright rather than of tieing the structure together, and that neither in the plans for such

construction, nor in the construction itself, was the element of any possible raising of this sidewalk by the wind considered as an element of danger to be guarded against.

The uncontradicted testimony of a witness competent to testify from an engineering and bridge construction standpoint was that with the weight of this particular portion of the five-foot-wide sidewalk of about three and one-half tons in the length of the 135 feet of the portion that was carried across the bridge, that it would require a gale of wind blowing at the rate of no less than 105 miles an hour, actual velocity, blowing horizontally against this structure, to lift it, were there no toe-nailing or other method of fastening used between the stringers and the beams, and with the wind blowing against the structure at an upward angle of twenty-five degrees, it would have to be then blowing at seventy-two miles per hour, and if at an upward angle of thirty-five degrees at least sixty-seven miles per hour. In any and all of such events the wind velocity to merely raise the structure that was raised would be far in excess of what the evidence disclosed were the winds in that vicinity in the past.

The evidence in this case satisfactorily shows that a wind such as occurred here, doing damage as it did to other places in the city of *Sturgeon Bay* over a space of two miles in length and from 1,500 to 3,600 feet in width, was in the nature of what is generally termed a tornado or incipient tornado with a whirling motion, and quite different from the ordinary severe wind storm, and the jury by its verdict found as a fact that it was an extraordinary storm, and the evidence would hardly permit of any other conclusion.

The trial court was clearly right in saying that it was demonstrated to a mathematical certainty that no ordinary wind could have carried away this structure, and therefore the finding of the jury in their response to the second question was not based upon the evidence and could not support a judgment for plaintiff.

*By the Court.*—Judgment affirmed.